IN the MATTER OF the LIQUIDATION OF ALL-STAR INSURANCE CORPORATION, a Wisconsin Corporation,

Roderick B. MCNAMEE, Special Deputy Commissioner of Insurance of the State of Wisconsin for the liquidation of All-Star Insurance Corporation, Plaintiff-Respondent,

v.

APS INSURANCE AGENCY, INC., Defendant-Appellant. [Case No. 81–1349.]

IN the MATTER OF the LIQUIDATION OF ALL-STAR INSURANCE CORPORATION, a Wisconsin Corporation,

Roderick B. MCNAMEE, Special Deputy Commissioner of Insurance of the State of Wisconsin for the liquidation of All-Star Insurance Corporation, Plaintiff-Respondent,

v.

LEE M. SCARBOROUGH & COMPANY, Defendant-Appellant. [Case No. 81–1350.]

Supreme Court

*Nos. 81–1349, 81–1350. Argued December 1, 1982.— Decided January 5, 1983.*

(Also reported in 327 N.W.2d 648.)

For the appellant there were briefs by *Maurice J. McSweeney, Michael A. Bowen* and *Foley & Lardner,* Milwaukee, and oral argument by *Mr. Bowen.* [Case No. 81–1349.]

For the respondent there was a brief by *Matthew J. Flynn, John A. Rothstein, James A. Urdan* and *Quarles*

& *Brady*, Milwaukee, and oral argument by *Mr. Flynn*. [Case No. 81–1349.]

For the appellant there were briefs by *Christine K. Ohm, Michael J. Pfau* and *Kluwin, Dunphy, Hankin & McNulty*, Milwaukee, and oral argument by *Ms. Ohm*. [Case No. 81–1350.]

For the respondent there was a brief by *Matthew J. Flynn, John A. Rothstein, James A. Urdan* and *Quarles & Brady*, Milwaukee, and oral argument by *Mr. Flynn*. [Case No. 81–1350.]

BEILFUSS, C.J.   This is an appeal from judgments entered based upon orders granting summary judgment in favor of the plaintiff in two actions which were consolidated before the circuit court and for purposes of appeal.

These appeals arise out of the liquidation of the All-Star Insurance Corporation.  All-Star, a Wisconsin corporation formerly engaged in the business of insurance, was ordered into liquidation on March 1, 1977, pursuant to ch. 645, Stats. 1977.  The plaintiff, Roderick B. Mc-Namee was appointed Special Deputy Commissioner of Insurance for the purposes of All-Star's liquidation.  In this capacity, the plaintiff commenced these actions against the defendants, APS Insurance Agency, Inc. (APS) and Lee M. Scarborough & Company (Scarborough), to recover sums allegedly due under separate agencies contracts between the two defendants and All-Star.[1]

Both defendants separately entered into agency agreements with All-Star and served as agents soliciting applications for insurance for All-Star pursuant to these agreements.  APS is an Illinois corporation and entered into an agency contract with All-Star on June 1, 1973.

---

[1] These actions are two of many commenced by the liquidator against allegedly nonpaying agents.

APS's relationship with All-Star began at All-Star's initiation, when All-Star asked APS to serve as its agent. In October, 1975 APS stopped serving as All-Star's agent pursuant to an order from the Illinois Insurance Commissioner. Scarborough is a Louisiana corporation and entered into its agency contract with All-Star on April 18, 1973. It appears that the agency agreement was in effect until the time All-Star was ordered into liquidation, but the record is not entirely clear on this point.

The only contacts either defendant ever had with Wisconsin were their respective agency contracts with All-Star and their actions incident to those contracts. Neither defendant is licensed to do business in Wisconsin. The defendants have no place of business, office, property, mailing address, telephone listing, bank account nor any agents or employees in the state. Neither defendant has engaged in any business in the state, nor has authorized any agent or employee to transact business in Wisconsin. All the contacts between the defendants and All-Star pursuant to the agency contracts occurred outside of Wisconsin or by interstate mail or telephone.

In 1979 the plaintiff commenced these actions against the defendants to recover unpaid premium and unearned commissions allegedly owed to All-Star under the contracts. Both defendants moved to dismiss the complaints for lack of personal jurisdiction. The trial court consolidated the cases for the hearing on the merits of the motions.

The trial court denied the motions finding personal jurisdiction pursuant to sec. 645.04(5)(a), Stats. The court rejected the defendants' contention that the exercise of personal jurisdiction pursuant to this statute was unconstitutional. The court held that the Supreme Court's decision in *McGee v. International Life Ins. Co.*, 355 U.S. 220 (1957), allowed the exercise of personal jurisdiction pursuant to such a special jurisdictional statute pri-

marily because of the regulated nature of the insurance industry.

The trial court subsequently entered summary judgment in favor of the plaintiff on the merits of the actions as to both defendants. APS appealed both the personal jurisdiction issue and the determination on the merits. Scarborough appealed only as to the issue of personal jurisdiction. We accepted the appeal on certification from the court of appeals.

The issue on appeal is whether a Wisconsin court may constitutionally exercise jurisdiction over the defendants pursuant to sec. 645.04(5)(a), Stats. We hold that the assertion of jurisdiction pursuant to this statute does not violate due process.

The determination of whether Wisconsin courts have jurisdiction over a nonresident defendant is a two-step process. First, it must be determined whether the defendants' contacts with Wisconsin subject them to jurisdiction under a Wisconsin long arm statute. If so, then the court must determine whether the exercise of jurisdiction under the statute comports with due process requirements. *Hasley v. Black, Sivalls & Bryson, Inc.*, 70 Wis. 2d 562, 575, 235 N.W.2d 446 (1975); *Zerbel v. H.L. Federman & Co.*, 48 Wis. 2d 54, 60, 179 N.W.2d 872 (1970).[2]

Because this case arises out of the liquidation of All-Star, jurisdiction over the defendants is asserted under sec. 645.04(5)(a), Stats., which provides:

"(5) PERSONAL JURISDICTION, GROUNDS FOR. In addition to other grounds for jurisdiction provided by the law

---

[2] But see *Lincoln v. Seawright,* 104 Wis. 2d 4, 10, 310 N.W.2d 596 (1981) and cases cited therein for the presumption of due process when sec. 801.05, Stats., the general long-arm statute, is complied with. We deal here with sec. 645.04(5)(a) which has a somewhat different origin and different concern.

of this state, a court of this state having jurisdiction of the subject matter has jurisdiction over a person served pursuant to s. 801.11 in an action brought by the receiver of a domestic insurer or an alien insurer domiciled in this state:

"(a) If the person served is obligated to the insurer in any way as an incident to any agency or brokerage arrangement that may exist or has existed between the insurer and the agent or broker, in any action on or incident to the obligation;"

This statute is a special jurisdictional statute applicable in liquidation proceedings under ch. 645, Stats. The statute allows the exercise of jurisdiction over any person who is obligated to a Wisconsin insurer involved in a ch. 645 proceeding, incident to an agency or brokerage agreement.[3] Both defendants concede that the language of sec. 645.04(5)(a) covers their situation. Thus, the only issue before this court is whether the exercise of jurisdiction pursuant to this statute is constitutional.

The fourteenth amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980). A state court may exercise jurisdiction over a nonresident if "minimum contacts" exist between the defendant and the forum such that the assertion of jurisdiction is consistent with "'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940). Physical presence is not required; the defendant need only act indirectly in the state. *Wisconsin Electrical Manufacturing Co., Inc. v. Pennant Products,*

---

[3] Four other states have adopted a similar jurisdiction statute. Idaho Code Sec. 41–3304 (Supp. 1981); Ky. Rev. Stat. Sec. 304.33–040 (1981); Mont. Code Ann. Sec. 33–2–1306 (1981); Nev. Rev. Stat. Sec. 696 B. 200 (1980).

*Inc.,* 619 F.2d 676, 678 n 6 (7th Cir. 1980). The relationship between the defendant and the forum must be such that it is reasonable and fair to require the defendant to defend the particular suit in the particular forum. *World-Wide Volkswagen,* 444 U.S. at 291. Thus, the touchstone of the exercise of jurisdiction is reasonableness and fairness.

The defendants contend that the exercise of jurisdiction in these actions violates due process. They assert that the statute is unconstitutional on its face because it allows the exercise of jurisdiction without requiring even a single isolated contact with Wisconsin. They further contend that the statute, as applied, is unconstitutional because it allows the exercise of jurisdiction where the nonresident's only contact with the state is a contract with a Wisconsin plaintiff. We believe that under the decision in *McGee v. International Life Ins. Co.,* 355 U.S. 220 (1957) both these arguments fail.

*McGee* involved a suit instituted in California by the beneficiary of a life insurance policy against the Texas insurance company which denied coverage. The only contacts between the insurer and California were the mailing of a reinsurance certificate to the insured in California and the policyholder's payment of the premiums by mail. The court found that due process was not violated by the exercise of jurisdiction based on these minimal contacts finding that "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State." 355 U.S. at 223. The court reasoned:

"The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a se-

vere disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof. Often the crucial witnesses—as here on the company's defense of suicide—will be found in the insured's locality. Of course, there may be inconvenience to the insurer if it is held amenable to suit in California where it had this contract but certainly nothing which amounts to a denial of due process. *Cf. Travelers Health Assn. v. Virginia ex rel. State Corporation Comm'n,* 339 N.S. 643. There is no contention that respondent did not have adequate notice of the suit or sufficient time to prepare its defenses and appear." 355 U.S. 223–24.

This court as well as the United States Supreme Court have both recognized that *McGee* is based on the principle that states have a strong interest in providing their citizens with a forum in insurance disputes. This court in *Nagel v. Crain Cutter Co.,* 50 Wis. 2d 638, 649–50, 184 N.W.2d 876 (1971) stated:

"For example, in *McGee v. International Life Ins. Co.,* the state had a special interest in 'providing effective means of redress for its residents when their insurers refuse to pay claims.' To effectuate its public policy, California enacted a statute specifically holding nonresident insurers amenable to the jurisdiction of California courts. *The special public interest of the individual states in the insurance industry is well recognized.* . . . While public interest is not enough, in and of itself, to constitutionally justify the exercise of personal jurisdiction over a foreign defendant, this court has indicated that it is a factor of some significance." (Emphasis supplied).

And as stated by the United States Supreme Court in *Hanson v. Denckla,* 357 U.S. 235, 252 (1958) in distinguishing *McGee:*

"This case is also different from *McGee* in that there the State had enacted special legislation (Unauthorized Insurers Process Act) to exercise what *McGee* called its 'manifest interest' in providing effective redress for citizens who had been injured by nonresidents engaged in an activity that the State treats as exceptional and subjects to special regulation."

Thus, where the state's interest in "providing effective means of redress for its residents" is strong, as in the highly regulated area of insurance, the minimum contacts requirements of *International Shoe* can be met through a single isolated contract. *Zerbel,* 48 Wis. 2d at 69.

There is some controversy as to whether *McGee* was limited by the decision in *Hanson v. Denckla,* 357 U.S. 235 (1958), decided the same term as *McGee.*[4] However, both the United States Supreme Court and this court have recognized the continuing validity of the *McGee* decision. In *Hasley v. Black, Sivalls & Bryson, Inc.,* 70 Wis. 2d at 583, this court examined both *McGee* and *Hanson* and found that the *Hanson* decision "did acknowledge the correctness of *McGee.*" The court went on to distinguish *Hanson* from *McGee* and stated: *"Hanson* is best viewed as an application of the due process standard to a particular factual situation." *Id.* More importantly, recent United States Supreme Court decisions have reaffirmed the continuing validity of *McGee.* See, *Rush v. Savchuk,* 444 U.S. 320, 333 (1980) ; *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 292–93 (1980) ; *Kulko v. California Superior Court,* 436 U.S. 84, 98 (1978).

---

[4] This controversy surrounds the effect of the following statement in *Hanson:*

"[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253.

For a detailed discussion of the effect of this language see, *Zerbel,* 48 Wis. 2d at 60–62.

We find that the *McGee* decision is applicable and controlling in this case. This case arises out of liquidation proceedings instituted pursuant to ch. 645, Stats. Ch. 645 was enacted in 1967 as the product of a comprehensive study and revision of the insurance laws and redesigned all aspects of insurance delinquency proceedings.[5] It sets up a comprehensive framework for the complete, orderly and efficient liquidation of insolvent Wisconsin insurance companies in order to fairly distribute the unavoidable burden of delinquency.[6] The purposes are more explicitly stated in sec. 645.01(4), which provides:

"(4) PURPOSE. The purpose of this chapter is the protection of the interests of insureds, creditors, and the public generally, with minimum interference with the normal prerogatives of proprietors, through:

"(a) Early detection of any potentially dangerous condition in an insurer, and prompt application of appropriate corrective measures, neither unduly harsh nor subject to the kind of publicity that would needlessly damage or destroy the insurer;

"(b) Improved methods for rehabilitating insurers, by enlisting the advice and management expertise of the insurance industry;

"(c) Enhanced efficiency and economy of liquidation, through clarification and specification of the law, to minimize legal uncertainty and litigation;

"(d) Equitable apportionment of any unavoidable loss;

"(e) Lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extension of the scope of personal jurisdiction over debtors of the insurer outside this state; and

"(f) Regulation of the insurance business by the impact of the law relating to delinquency procedures and substantive rules on the entire insurance business."

The chapter is based substantially on the Uniform Insurers Liquidation Act which is integrated into ch. 645,

---

[5] 1967 Committee Comment accompanying ch. 645, W.S.A. at 400.
[6] *Id.*, at 401.

Stats., and "both modified and extended to assure more efficient regulation of interstate delinquency problems."[7] Over thirty other states have also adopted the Uniform Act.[8]

As part of this chapter the legislature enacted sec. 645.04(5)(a), Stats., which allows Wisconsin courts to obtain jurisdiction over nonresident agents and brokers in order to efficiently and inexpensively gather up the outstanding assets of the insolvent insurer. As stated in the interpretative commentary accompanying sec. 645.04 (5):

"Sub. (5): This subsection extends the jurisdiction of the Wisconsin court in order to strengthen the hand of the receiver. *In so doing, however, it still assures 'fair play and substantial justice,' (see International Shoe Co. v. Washington, 66 S. Ct. 154, 326 U.S. 310, 316, 90 L. Ed. 95, 161 A.L.R. 1057 (1945)) to any defendants affected by this new basis of jurisdiction. When a formal delinquency proceeding begins, agents' balances are likely to constitute a large share of the insurer's assets. Moreover, they are assets difficult to collect. To facilitate gathering the funds, the Wisconsin courts are given expanded personal jurisdiction, making it easier and more economical to reduce these claims to judgment.* Of course, actual collection will still require proceedings where the defendant's assets can be found, but the full faith and credit clause and the Uniform Enforcement of Foreign Judgments Act (s. 270.46) [U.L.A.] will make that part of the task easier. The other 2 grounds for jurisdiction may be used to help undo transactions by which the insurer's assets were systematically depleted, if appropriate defendants can be found. The connections between the insurer and the persons listed in this subsection are close enough that a statute giving such personal jurisdiction, for purposes of actions arising out of the relationship, satisfies the requirements of due process.

"The Uniform Insurers Liquidation Act [U.L.A.] gives the domiciliary receiver the primary right to collect

---

[7] *Id.*, at 405.

[8] *See,* ch. 645, W.S.A. at 50 (Supp. 1982–83).

agents' balances. Par. (a) facilitates his doing so when this state is the domiciliary state by providing for jurisdiction here. See s. 645.83 (1) for the Uniform Act provision giving the primary right where another state is the domiciliary state." (Emphasis supplied.) Ch. 645, W.S.A. at 418.

Like California in *McGee*, Wisconsin has enacted a special jurisdictional statute which asserts the state's "manifest interest" in providing an efficient and inexpensive forum for the liquidation of Wisconsin insurers. *Cf. Kulko v. California Superior Court*, 436 U.S. at 98. The plaintiff is the special deputy appointed to liquidate All-Star. Therefore, this case involves, in substance, actions by the state of Wisconsin acting through the liquidator to protect, among others, the collective interests of Wisconsin residents who are policyholders, claimants and creditors of All-Star. The state's interest is even more compelling than in *McGee* because the plaintiff represents numerous Wisconsin residents. "These residents would be at a severe disadvantage if [the plaintiff was] forced to follow [these insurance agents] to a distant State in order to hold [them] legally accountable." *McGee*, 355 U.S. at 223.

The defendants are involved in the highly regulated insurance business. They both acted as agents soliciting insurance applications which were sent to All-Star in Wisconsin. All-Star performed its part of the contract entirely in Wisconsin. Scarborough and APS acted as agents for All-Star for four and two years, respectively. During these years the defendants made numerous phone calls to Wisconsin. Further, the contract required that the defendants send, on a monthly basis, premium payments to Wisconsin on all applications solicited by the defendants and accepted by All-Star. Thus, the two agency contracts between the defendants and All-Star

had a "substantial connection" with the state of Wisconsin.

Moreover, because these actions are just two of many instituted against agents of All-Star, it is clear that most of the witnesses and evidence is located in Wisconsin. The burden and inconvenience on the defendants in having to defend in Wisconsin rather than Louisiana or Illinois is not so unreasonable that it results in a denial of due process.

The defendants rely on cases such as *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.*, 597 F.2d 596 (7th Cir. 1979) and *Capitol Indem. Corp. v. Certain Lloyds Underwriters*, 487 F. Supp. 1115 (W.D. Wis. 1980), for the proposition that merely entering into a contract with a Wisconsin resident is not sufficient to confer jurisdiction. They contend that the *Lakeside*-type decisions are applicable because this is merely a contract dispute between two corporations who are involved in the insurance business. They distinguish *McGee* on the grounds that it involved an individual asserting coverage against a foreign insurer rather than a contract dispute between two corporations. We disagree.

The defendants' arguments oversimplify the posture of this case. The instant case does not involve two corporations in a contract dispute as in *Lakeside*. Rather, as stated above, the plaintiff is the representative of the state of Wisconsin and is charged with the duty of effecting the efficient liquidation of a domestic insurance company. The purpose behind the actions instituted by the plaintiff against these defendants is to protect Wisconsin residents who have claims or an interest in All-Star. This interest, as asserted by the enactment of sec. 645.04(5)(a), Stats., and the connection of the agency contracts with the state of Wisconsin, brings this case squarely within the *McGee* decision. No similar public interest was present in the cases cited by the defendants. Rather the cases specifically distinguished *McGee* on

the grounds the decision "was based in substantial part on the special nature of the business of insurance."[9] Therefore we find that they have no application to the instant case which involves basically the same public interest as in *McGee*.[10]

In conclusion, we believe that it is fair and reasonable to exercise jurisdiction over the defendants. The litigation is connected to the forum because it involves the liquidation of a Wisconsin insurer. The defendants are linked to Wisconsin by virtue of their contracts with All-Star and their actions incident to the contracts. Wisconsin has a manifest interest in providing an efficient and inexpensive forum in which to liquidate domestic insurance companies in order to protect its citizens. Finally, the burden on the defendants to defend in Wisconsin is not unreasonable. Therefore we hold that the defendants are amenable to the jurisdiction of the Wisconsin courts in these actions based on their agency contracts with All-Star.

We do not reach the issues raised by APS on the merits of the trial court's grant of summary judgment in favor of All-Star. We remand these issues to the court of appeals.

*By the Court.*—Case No. 81–1349 is remanded to the court of appeals for further proceedings not inconsistent with this opinion.

Judgment affirmed in Case No. 81–1350.

ABRAHAMSON, J., took no part.

---

[9] *Lakeside,* 597 F2d at 600; *Capitol Indemnity,* 487 F Supp. at 1119.

[10] It should also be noted that the Seventh Circuit in *Lakeside,* 597 F2d at 599, recognized the "likelihood" that this court may have decided the case differently citing to *Zerbel v. H.L. Federman & Co.,* 48 Wis. 2d 54, 179 N.W.2d 872 (1970). We express no opinion as to the correctness of the *Lakeside* decision. Instead we find that it is distinguishable from this case.