William D. HAGER, Commissioner of Insurance of the State of Iowa, as Liquidator of Iowa National Mutual Insurance Company, Appellee,

v.

DOUBLETREE, A Wyoming Corporation; Roger K. Bower; Alden Insurance Agency, A Wyoming Corporation; and Larry R. Alden, Appellants.

No. 88–581.

Supreme Court of Iowa.

May 17, 1989.

**2.** See the discussion in division III of this opinion.

Dennis M. Kirven of Kirven & Kirven, Buffalo, Wyo., Harry Perkins III of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellants.

Philip Ostien and John K. Vernon of Davis, Grace, Horvath, Gonnerman & Rouwenhorst, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, NEUMAN, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

Iowa National Mutual Insurance Company became insolvent and, pursuant to statute, the Iowa Commissioner of Insurance was appointed as liquidator. *See* Iowa Code § 507C.16–.18 (1987). As a part of his winding up of the company's affairs, the liquidator sued these defendants for unpaid premiums owed to Iowa National. The defendants, all nonresidents of Iowa, challenged the jurisdiction of the court on the ground that they lacked sufficient contact with Iowa to confer personal jurisdiction on an Iowa court. The district court rejected the jurisdictional challenge, and the defendants petitioned for a writ of certiorari. We considered the certiorari petition as an application for interlocutory appeal and granted the application. *See* Iowa R.App.P. 2, 304. We now affirm.[1]

The defendants Doubletree and the Alden Insurance Agency are Wyoming insurance companies who acted as agents in that state for Iowa National. Defendants Roger K. Bower and Larry R. Alden were personal guarantors for Doubletree and Alden Insurance Agencies, respectively, guaranteeing the companies' accounts with Iowa National. We will frequently refer to these defendants collectively as Doubletree.

William D. Hager, the Iowa Insurance Commissioner, is authorized by statute to collect all "debts and money due and claims belonging to the insurer, wherever located," Iowa Code § 507C.21(1)(f), and to file suit if necessary to collect them. Iowa Code § 507C.21(1)(*l*). Iowa Code section 507C.4 provides this grant of jurisdiction for Iowa courts to implement the liquidator's authority:

> 3. A court having jurisdiction of the subject matter has jurisdiction over a person served pursuant to the Iowa rules of civil procedure or other applicable provisions in an action brought by the receiver of a domestic insurer or an alien insurer domiciled in this state for any of the following:
>
> *a.* In an action or incident to an obligation if the person served is obligated to the insurer in any way as an incident to an agency or brokerage arrangement that may exist or has existed between the insurer and the agent or broker.

This section provides for jurisdiction in an action by a *receiver;* however, section 507C.2(14) includes liquidators within the definition of receivers.

Doubletree attacks the statute on constitutional grounds, claiming it is invalid on its face and invalid as applied.

## I. *The Facial Challenge.*

■ Doubletree challenges section 507C.4 on its face, because it does not require "minimum contacts" as a prerequisite to the exercise of personal jurisdiction. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1940).[2]

We will construe a statute in such a way as to preserve it and render it constitutional, if possible. *Hines v. Illinois Cent. Gulf R.R.*, 330 N.W.2d 284, 290 (Iowa 1983). We believe such a construction is appropriate here. Section 507C.4(3) provides that "[a] court having jurisdiction of the subject

---

1. Because the initial challenge to the district court's order was couched as an action in certiorari, the Iowa District Court was originally shown as the defendant. The caption has now been changed to show the case as an appeal.

2. Hager argues that the facial challenge was not raised in district court. However, our reading of the record suggests it was raised, at least minimally, by the defendants' motions to dismiss and supporting memoranda. We therefore address the facial invalidity argument on its merits.

matter has jurisdiction over a person *served pursuant to the Iowa rules of civil procedure* or other applicable provisions...." In connection with service of notice, Iowa Rule of Civil Procedure 56.2 provides that

> [e]very corporation, individual, personal representative, partnership or association that shall have the *necessary minimum contact* with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the constitution of the United States.

(Emphasis added.)

We have stated that rule 56.2 "expands Iowa's jurisdictional reach to the widest due process parameters of the federal constitution." *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980). Iowa Code section 507C.4 must be considered as incorporating the requirements of "necessary minimum contact[s]" as embodied in rule 56.2 thereby adopting the minimum contacts principles of *International Shoe*. We conclude that the statute when considered in this manner is facially valid.

II. *Validity of Section 507C.4(3) as Applied.*

■ Doubletree's second issue raises the validity of section 507C.4(3) as applied, arguing that under the facts of this case the agents lacked sufficient contacts with Iowa to permit an Iowa court to exercise personal jurisdiction over them or their guarantors. In order to resolve this issue, a short statement of the facts is necessary. The agency agreements in evidence were signed by Iowa National with Doubletree and Alden Insurance on May 8, 1984, and August 9, 1983, respectively. Under these agreements, the agents were to represent Iowa National in the State of Wyoming. Roger K. Bower and Larry R. Alden, principals in their respective companies, signed the agency agreements as guarantors. These agency agreements remained in force until Iowa National was placed in liquidation on October 10, 1985, under Iowa's "Insurers Supervision, Rehabilitation and Liquidation Act," Iowa Code ch. 507C (1985). At this time, both Doubletree and Alden Insurance were indebted to Iowa National for premiums collected by them.

Any discussion of personal jurisdiction under facts such as these must begin with *International Shoe,* which held that sufficient "minimum contacts" must exist between the defendant and the forum state in order to make the court's assertion of jurisdiction consistent with "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed. at 102.

These principles of due process and the exercise of jurisdiction over nonresidents have been further developed by the Supreme Court in later cases. *See, e.g., Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1958). Our court has also considered similar issues of personal jurisdiction. *See, e.g., Al–Jon, Inc. v. Garden St. Iron & Metal Co.,* 301 N.W.2d 709 (Iowa 1981); *Larsen v. Scholl,* 296 N.W.2d 785 (Iowa 1980); *Kagin's Numismatic Auctions, Inc. v. Criswell,* 284 N.W.2d 224 (Iowa 1979).

Doubletree claims that section 507C.4(3) is insufficient to confer jurisdiction on an Iowa court even though its language purports to do so. Doubletree argues that the statute may not create its own jurisdiction, that personal jurisdiction must be based on the facts in the case, and that the defendants' contacts with Iowa were not sufficient to satisfy the test for constitutionality. The statute must therefore be held to be unconstitutional as applied.

Doubletree's claim of insufficient contacts is based on several factors: the agency agreements were signed by the agents in Wyoming and for Iowa National by its authorized representative in either Colorado or Wyoming; none of the parties signed

in Iowa. The initial contacts to establish the agency relationships were by Iowa National which sent representatives to Wyoming for that purpose. The Wyoming agents did not write any insurance for persons in Iowa, and they did not maintain any offices or hire any employees in Iowa. All direct contacts between Iowa National and the defendants, they claim, occurred outside of Iowa or were handled by mail or telephone. Most contacts between the defendants and Iowa National were through a branch office of Iowa National in Denver, Colorado. The only direct dealings on a day-to-day basis between the defendants and the home office in Iowa were in connection with commercial umbrella policies, which apparently had to be approved by the home office. (Only Alden Insurance was shown to have had direct dealings with the home office on these policies, and that dealing was quite limited. The record is silent as to any direct contact between Doubletree and the home office concerning such policies.)

Doubletree's argument is that, to obtain personal jurisdiction over the defendants, Hager would have to show that the defendants "purposefully established minimum contacts with the foreign state," and those contacts would "be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Doubletree argues that the record lacks any showing that the defendants "purposefully established" contacts in Iowa. Without a showing that a nonresident defendant affirmatively sought to avail itself of the laws or benefits of the State of Iowa, Doubletree argues, there can be no finding of sufficient minimum contacts.

Hager, understandably, sees the matter of contacts in a different light. As to the individual guarantors, Bower and Alden, he points out they were principal officers in their respective companies and signed the guaranty agreements in order to induce Iowa National to designate the defendant companies as agents. The guarantors and their respective companies signed the agency agreements with Iowa National and therefore created substantial, ongoing connections with the State of Iowa.

Moreover, Iowa National's home office set policies and promulgated rules and regulations which were, frequently, communicated by the home office directly to the agents. All agency accounting was handled by the home office in Cedar Rapids, and monthly statements to agents showing premiums owed by and commissions due to them were prepared in Cedar Rapids and mailed directly to the agents. Agents were to submit their premium payments directly to Cedar Rapids, and any problems with agents' accounts were to be handled by mail or telephone directly between Cedar Rapids and the agents.

Several similarities in the facts of *Burger King* and the present case are apparent. In *Burger King*, the plaintiff sued a nonresident franchisee, a resident of Michigan, in the plaintiff's own state of Florida. The defendant argued that his relationship with Florida was insufficient to confer jurisdiction on a Florida court. In *Burger King*, the relationship between the company and the defendants had been quite attenuated. The defendant had apparently never been in Florida. Direct supervision of the defendant came from a Burger King district office in Michigan, not Florida, and the defendant apparently believed that the Michigan office "was for all intents and purposes the embodiment of Burger King." The Supreme Court, citing several of its earlier cases, stated the general rule as follows:

> Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to re-

quire him to submit to the burdens of litigation in that forum as well.

*Burger King,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84, 85 L.Ed.2d at 542–43 (citations omitted). The Court made it clear that a defendant's physical presence in the forum state is not a prerequisite to finding sufficient contacts, saying

> it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Id.* at 476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543.

In applying the general rules for personal jurisdiction, the Court in *Burger King* noted a division among the federal circuits respecting whether and to what extent a contract can constitute a "contact" for purposes of due process analysis. *Id.* at 478, 105 S.Ct. at 2185, 85 L.Ed.2d at 544. The Court concluded that a contract *alone* cannot automatically establish sufficient contacts, but it went on to observe the following, which we believe is pertinent here:

> [A] "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of business transaction." It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Id.* at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545 (citation omitted).

It is true that a plaintiff who has unilaterally sought out a nonresident cannot create a basis for personal jurisdiction on that fact alone.

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirements of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239, 2 L.Ed.2d at 1298.

The defendants in this case place great reliance on the fact that the initial contact was made by Iowa National, not the defendants. We believe under the facts of this case the defendants place too much emphasis on that fact. While the initial contact was made by Iowa National, this initial contact developed into something significantly more: a contractual relationship which lasted several years and involved frequent contacts by telephone and mailed correspondence, together with substantial oversight by the home office in Iowa. We believe this relationship is capable of providing the "future consequences" and "actual course of dealing" which may form the basis of jurisdiction. *See Burger King,* 471 U.S. at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545.

While Iowa National initiated the contacts in Wyoming, what followed was a continuing business relationship which itself is the basis for jurisdiction under the reasoning of *Burger King.* This situation is a little like a marriage: while it was Iowa National who proposed, Doubletree accepted, and the resulting relationship makes it relatively insignificant which party started it all.

In *Burger King,* as in the present case, the defendants

> entered into a ... relationship [with the plaintiff] that envisioned continuing a wide-reaching context with [the plaintiff in the plaintiff's state.] In light of [the defendant's] voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami

headquarters, the quality and nature" of his relationship to the company in Florida can in no sense be viewed as "random," "fortuitous," or "attenuated." 471 U.S. at 480, 105 S.Ct. at 2186, 85 L.Ed. 2d at 545–46. Under these circumstances, the Court held it was presumptively reasonable that the defendant be called to answer in a Florida court. *Id.* at 481, 105 S.Ct. at 2187, 85 L.Ed.2d at 546.

In this case, the overall supervision of agents' accounts from the Cedar Rapids office, the requirement for payments of premiums to be made by agents directly to the Cedar Rapids office, the formulation and promulgation of company policies and rules directly to agents, the direct control of the home office over certain commercial policies, and the overall control exercised by the Cedar Rapids office are all significant factors. But most important, these defendants voluntarily entered into contracts with substantial Iowa ties and which anticipated long-term relationships with Iowa National's home office.

The Wisconsin Supreme Court considered similar questions of personal jurisdiction in *In re All–Star Insurance Corp.*, 110 Wis. 2d 72, 327 N.W.2d 648 (1983). In that case, an insurance company was ordered into liquidation, and the nonresident agents of the company were sued by the liquidator in the state of residency of the company. The agents challenged the court's jurisdiction on grounds that the defendants lacked sufficient minimum contacts with the forum state.

In *All–Star*, as in the present case, the insurance company initiated the agency relationship. The company was a resident of Wisconsin, and the two agents involved in this litigation were residents of Illinois and Louisiana, respectively. The only contacts between the company and the agents were their respective agency contracts with the insurance company "and their actions incident to those contracts." Neither defendant was a resident of Wisconsin at any time during the agency relationship, and they maintained no place of business there. Neither maintained any property, mailing address, telephone listing, or subagents in the forum state. All of the contacts between the defendants pursuant to the agency contract occurred outside of Wisconsin or by interstate mail or telephone. *Id.* at 73–74, 327 N.W.2d at 649–50.

Wisconsin had a personal jurisdiction statute for use against nonresident debtors of insolvent insurance companies much like Iowa's section 507C.4(3)(a), and the liquidator in the *All–Star* case relied on the statute in asserting jurisdiction over the Louisiana and Illinois agents. *Id.* at 74, 327 N.W.2d at 650. The defendants challenged the statute on due process grounds, asserting a lack of sufficient contacts.

In upholding the exercise of personal jurisdiction, the Wisconsin court said:

> The defendants are involved in the highly regulated insurance business. They both acted as agents soliciting insurance applications which were sent to All–Star in Wisconsin. All–Star performed its part of the contract entirely in Wisconsin. Scarborough and APS acted as agents for All–Star for four and two years, respectively. During these years the defendants made numerous phone calls to Wisconsin. Further, the contract required that the defendants send, on a monthly basis, premium payments to Wisconsin on all applications solicited by the defendants and accepted by All–Star. Thus, the two agency contracts between the defendants and All–Star had a "substantial connection" with the state of Wisconsin.

*All–Star*, 110 Wis. at 77, 327 N.W.2d at 654.

The interest of a state in providing a forum for suits against nonresidents, while not weighing as heavily as other factors in the minimum contact analysis, must nevertheless be considered. *See Al–Jon*, 301 N.W.2d at 711; *Larsen*, 296 N.W.2d at 788. Iowa's interest in orderly liquidation of insolvent insurance companies is shown by the statement of purpose found in Iowa Code section 507C.1(4):

> The purpose of this chapter is the protection of the interests of insureds, claimants, creditors, and the public, with minimum interference with the normal prerogatives of the owners and managers of insurers through all of the following:

. . . .

*c.* Enhanced efficiency and economy of liquidation, through clarification of the law, to minimize legal uncertainty and litigation.

. . . .

*e.* Lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extending the scope of personal jurisdiction over debtors of the insurer outside this state.

*f.* Regulation of the insurance business by the impact of the law relating to delinquency procedures and substantive rules on the entire insurance business.

The Wisconsin court also found that the practicalities of the case militated in favor of Wisconsin as the forum state. As in this case, most of the witnesses and evidence were located in the forum state, and weighing the relative inconvenience of the parties pointed to Wisconsin as the logical forum state. The inconvenience to the defendants was not unreasonable, particularly when compared to the inconvenience to the insurance company if forced to litigate in another state. Convenience of the parties is one of the factors to be considered, although it is not as significant as those factors directly touching the nature, quality, or quantity of the contacts. *Al–Jon,* 301 N.W.2d at 711. In the present case, Iowa National had 1360 agents in 15 states who were indebted to the company at the time of its liquidation. We believe, as the court did in *All–Star,* that this is a significant factor weighing in favor of Iowa as the forum state.

When all of the relevant factors are considered, we believe that sufficient contacts existed between the defendants and Iowa National's home office to allow personal jurisdiction consistent with due process. We conclude that section 507C.4(3)(a) is constitutional as applied and therefore affirm.

AFFIRMED.