CASCADE LUMBER COMPANY, Appellant,

v.

EDWARD ROSE BUILDING COMPANY, Appellee.

No. 98–206.

Supreme Court of Iowa.

July 8, 1999.

Dave Hughes, Cascade, for appellant.

Chad C. Leitch and Davin C. Curtiss of O'Connor & Thomas, P.C., Dubuque, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and TERNUS, JJ.

HARRIS, Justice.

Plaintiff was engaged by defendant Michigan corporation to supply construction materials for delivery to a building project in Illinois. This action to declare its rights under the agreement was dismissed for want of personal jurisdiction. We conclude Iowa had jurisdiction over the dispute.

Plaintiff Cascade Lumber Company (Cascade) is an Iowa corporation located in Dubuque County. Defendant Edward Rose Building Corporation (Rose) is a Michigan corporation that constructs and manages apartment complexes throughout the country, though not in Iowa. On the basis of phone conversations, Cascade agreed to supply trusses for a Rose building project in Peoria, Illinois. Three sets of trusses were to be constructed at Cascade's place of business in Iowa, to Rose's specifications, and delivered to the site in Peoria. A written agreement, prepared in Michigan by Rose, incorporated most of the terms covered by the telephone conversations. The dispute stems from Cascade's refusal to deliver trusses in 1997 in accordance with the 1996 prices.

Cascade filed this suit to declare the rights and obligations of the parties under the agreement. On Rose's motion, the trial court dismissed the action, finding

Rose's contacts with Iowa were insufficient for the exercise of personal jurisdiction. The matter is before us on Cascade's appeal.[1]

■ I. Our scope of review is as follows:

[W]e accept as true the allegations of the petition and the contents of uncontroverted affidavits. The plaintiff has the burden to sustain the requisite jurisdiction, but when he [or she] establishes a prima facie case the defendant has the burden of producing evidence to rebut that showing. The trial court's findings of fact have the effect of a jury verdict and are subject to challenge only if not supported by substantial evidence in the record; we are not bound, however, by the trial court's application of legal principles or its conclusions of law.

*State ex rel. Miller v. Internal Energy Management Corp.*, 324 N.W.2d 707, 709–10 (Iowa 1982) (citations omitted).

■ II. We have recognized a stronger interest in seeing jurisdiction extended to nonresident sellers than to nonresident purchasers. *Al–Jon, Inc. v. Garden St. Iron & Metal, Inc.*, 301 N.W.2d 709, 713 (Iowa 1981). In testing minimum contacts we consider: (1) whether the subject of the contract substantially impacts on Iowa; (2) our interest in protecting citizens of our state; and (3) a seller is more often the "aggressor" and "receives not only a profit but the benefit and protection of the forum state's laws." *Id.* at 713–14. The third consideration does not preclude extension of Iowa jurisdiction in cases involving nonresident purchasers who may be characterized as "active" in contrast with "passive" purchasers, that is, we perceive a difference between a nonresident who aggressively seeks purchase from a resident seller as contrasted with one who merely responds to solicitation by a resident seller. *Id.* at 714.

■ The factors to be considered in determining sufficient minimum contacts are as follows:

(1) the quantity of the contacts;

(2) the nature and quality of the contacts;

(3) the source of and connection of the cause of action with those contacts;

(4) the interest of the forum state; and

(5) the convenience of the parties.

*Al–Jon, Inc.*, 301 N.W.2d at 711. The first three are the most important. *Id.*

■ In discussing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), we have noted that "a contract *alone* cannot automatically establish sufficient contact." *Hager v. Doubletree*, 440 N.W.2d 603, 607 (Iowa 1989), *cert. denied*, 493 U.S. 934, 110 S.Ct. 325, 107 L.Ed.2d 315 (1989).

[A] "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of a business transaction." It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Id.* (quoting *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185, 85 L.Ed.2d at 545). We thought the defendants in *Hager* placed too much reliance on the fact that the initial contact was made by one of the plaintiffs. *Id.* We noted the initial contact developed into something much more, a contractual relationship which lasted several years and involved frequent contacts

---

1. Rose has moved to dismiss the appeal on the basis of subsequent events that are at issue in a separate appeal. Rose instituted litigation in Illinois between the same parties, involving the same dispute. The Illinois litigation is said to have resulted in a judgment for Rose and we are asked to accord it full faith and credit. Because the full-faith-and-credit issue will be resolved in the separate appeal, we give it no consideration here.

by telephone and mail correspondence. *Id.*

We think the simplicity—or the complexity—of a contract should not narrow, neither should it expand, the five-factor test in determining minimum contacts. The fact that the agreement in controversy here can be easily summarized does not necessarily affect its relationship with Iowa.

III. Although Rose would characterize the negotiations as a simple placement of an order, Cascade's affidavit shows four months of making arrangements, through multiple phone conversations, for the construction in Iowa of made-to-order trusses. Cascade's affidavit asserts that Rose made a number of contacts to facilitate agreement and that

> [s]uch communications are customary and usual in the course of events involved in the manufacture and delivery of trusses for projects such as the one involved in this case. Specifications for the trusses are frequently changed between the time of order and actual manufacture due to deviations which occur during the actual construction from the original plans. The plans need to be continuously checked to be certain that the specifications have not changed.

Whatever was to be done under the agreement, either as contemplated or as the construction proceeded, was to take place at Cascade's place of business in Iowa. Negotiations, to be sure, took place both from Rose's office in Michigan and Cascade's here. But the construction of the trusses was to take place only here. Rose maintained contact during construction to assure it was done to its satisfaction.

Except for possibly mishandling the trusses on the date of delivery to Peoria, the only way Cascade could have breached the agreement would be in connection with its manufacture here. The most likely way Rose could breach the agreement would be by failure to pay Cascade here in Iowa. Delivery in Illinois is a factor militating against Iowa jurisdiction, but the agreed payment for the trusses here in Iowa favors it.

The quantity, nature, and quality of the contacts contend for Iowa jurisdiction. The suit related mainly to construction activity here. Iowa's interest in the dispute is at least equal to that of Illinois or Michigan and Iowa provides as convenient a forum as any of the three states.

We conclude that Iowa has personal jurisdiction and the suit should not have been dismissed.

**REVERSED AND REMANDED.**