# IN THE SUPREME COURT OF IOWA

No. 52 / 05-0306

Filed June 29, 2007

**ADDISON INSURANCE COMPANY**,

     Appellee,

vs.

**KNIGHT, HOPPE, KURNIK & KNIGHT, L.L.C.**,

     Appellant.

---

Appeal from the Iowa District Court for Linn County, Kristin L. Hibbs, Judge.

An Illinois company appeals the district court's ruling that the court had personal jurisdiction over the company. **AFFIRMED.**

James E. Shipman and Chad M. Von Kampen of Simmons, Perrine, Albright & Elwood, P.L.C., Cedar Rapids, and David M. Macksey and Victor J. Pioli of Johnson & Bell, Ltd., Chicago, Illinois, for appellant.

Patrick M. Roby and Robert M. Hogg of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellee.

**STREIT, Justice.**

An Illinois law firm regularly represented an Iowa insurance company's insureds in Illinois. After the law firm allegedly botched an appeal to the Illinois Appellate Court, the Iowa company filed a legal malpractice claim against the law firm in Linn County, Iowa. In a preanswer motion, the law firm alleged lack of personal jurisdiction, improper venue, and forum non conveniens. The district court denied the motion and we granted the law firm's interlocutory appeal. We find the law firm had sufficient minimum contacts with the state of Iowa to warrant personal jurisdiction. The parties had a long-term business arrangement that caused the law firm to have substantial, ongoing communications with the insurance company in Iowa. We also find Linn County is proper for venue. The law firm failed to preserve for appeal the issue of forum non conveniens. We affirm the district court.

### I.      Facts and Prior Proceedings

Addison Insurance Company is an Illinois corporation with its principal place of business in Cedar Rapids, Iowa. It is a subsidiary of United Fire & Casualty and is part of the United Fire Group. Addison was originally located in Lombard, Illinois. However, since mid-1998, Addison's primary operations (including underwriting, marketing, claims handling, accounting, and support services) have been located in Cedar Rapids. Addison writes insurance in Iowa, Illinois, and several other states.

The law firm of Knight, Hoppe, Kurnik & Knight ("Knight") is an Illinois limited liability company. Knight's principal place of business is Des Plaines, Illinois.

In March 1993, Knight agreed to represent Addison's insureds in Illinois cases. When Addison informed Knight it was relocating its primary operations to Cedar Rapids in 1998, Knight expressed a strong interest in

continuing their relationship. Knight and Addison regularly communicated via telephone, facsimile and mail regarding the cases Knight was handling for Addison. Additionally, Pat Fanning, a partner at Knight, visited Addison in Cedar Rapids shortly after the company's relocation.[1] Fanning conducted a seminar on recent changes to Illinois law and discussed current cases with management. From 1998 through 2003, Addison paid Knight $823,871 for its services.

In September 2000, Knight on behalf of Addison, filed an action seeking a declaratory judgment against Knoedler Manufacturing, Inc. in Cook County, Illinois. Addison claimed Knoedler had a duty to indemnify Addison pursuant to a 1993 purchase agreement between Knoedler and one of Addison's insureds. Addison sought $683,419 for its attorney fees, costs, and settlement paid in connection with a products liability claim. The district court granted Knoedler's motion to dismiss. After Addison's motion to reconsider was denied, Knight filed a notice of appeal on Addison's behalf. However, Knight failed to either file the record or brief the issues with the Illinois Appellate Court. In June 2002, the Illinois Appellate Court granted Knoedler's motion to dismiss for failure to timely file the record on appeal. John Pearson, a partner at Knight, traveled to Cedar Rapids to break the news to Addison.

Addison filed the present action against Knight and attorney James Meece for legal malpractice in Linn County, Iowa. Meece was the attorney at Knight assigned to the Knoedler action. Meece and Knight each filed a preanswer motion to dismiss for lack of personal jurisdiction, improper venue, and forum non conveniens. The district court found Knight's

---

[1] Fanning also traveled to Cedar Rapids in 1996 and gave a presentation to United Fire claims personnel. These visits to Cedar Rapids were part of Knight's efforts to strengthen the law firm's business relationships with Addison and United Fire.

contacts with Iowa were sufficient to confer personal jurisdiction and that venue was proper in Linn County.  It granted Meece's motion to dismiss for lack of personal jurisdiction.  Knight filed an application for interlocutory appeal which this court granted.

## II.     Standard of Review

> "[W]e accept as true the allegations of the petition and the contents of uncontroverted affidavits.  The plaintiff has the burden to sustain the requisite jurisdiction, but when he [or she] establishes a prima facie case the defendant has the burden of producing evidence to rebut that showing.  The trial court's findings of fact have the effect of a jury verdict and are subject to challenge only if not supported by substantial evidence in the record; we are not bound, however, by the trial court's application of legal principles or its conclusions of law."

*Aquadrill, Inc. v. Envtl. Compliance Consulting Servs., Inc.*, 558 N.W.2d 391, 392 (Iowa 1997) (quoting *Percival v. Bankers Trust Co.,* 450 N.W.2d 860, 861 (Iowa 1990)).  Thus, we review the trial court's ruling dismissing Knight's motion to dismiss for errors at law.  Iowa R. App. P. 6.4.

## III.    Merits

## A.      Personal Jurisdiction

Iowa Rule of Civil Procedure 1.306 "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution."  *Hammond v. Fla. Asset Fin. Corp.,* 695 N.W.2d 1, 5 (Iowa 2005) (citing *Hodges v. Hodges,* 572 N.W.2d 549, 552 (Iowa 1997)).  It provides in pertinent part:

> Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States.

Iowa R. Civ. P. 1.306.

The Due Process Clause requires a nonresident to have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95, 102 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278, 283 (1940)). In applying the standard, we consider five factors:

1. the quantity of the contacts;
2. the nature and quality of the contacts;
3. the source and connection of the cause of action with those contacts;
4. the interest of the forum state; and
5. the convenience of the parties.

*Larsen v. Scholl,* 296 N.W.2d 785, 788 (Iowa 1980). Of these factors, the first three are the most important. *Aquadrill,* 558 N.W.2d at 393.

"The minimum contacts test is meant to insure the fairness and reasonableness of requiring a nonresident to defend a lawsuit in the forum state." *Taylor v. Trans-Action Assoc., Inc.,* 509 N.W.2d 501, 504 (Iowa Ct. App. 1993) (citing *Int'l Shoe,* 326 U.S. at 317, 66 S. Ct. at 158, 90 L. Ed. at 102). A defendant's conduct relative to the forum state must be such that the defendant should "'reasonably anticipate being haled into court there.'" *Heslinga v. Bollman,* 482 N.W.2d 921, 922 (Iowa 1992) (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490, 501 (1980)). This requires "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hager v. Doubletree,* 440 N.W.2d 603, 607 (Iowa 1989), *cert. denied,* 493 U.S. 934, 110 S. Ct. 325, 107 L. Ed. 2d 315 (1989) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228, 1239, 2 L. Ed. 2d 1283, 1298 (1958)). In

determining whether minimum contacts exist, we focus on " 'the relationship among the defendant, the forum, and the litigation.' " *Rush v. Savchuk,* 444 U.S. 320, 327, 100 S. Ct. 571, 577, 62 L. Ed. 2d 516, 524 (1980) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S. Ct. 2569, 2580, 53 L. Ed. 2d 683, 698 (1977)).

There are two types of personal jurisdiction: specific jurisdiction and general jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404, 410–11 (1984). " 'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.' " *Roquette Am., Inc. v. Gerber*, 651 N.W.2d 896, 900 (Iowa Ct. App. 2002) (quoting *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)). General jurisdiction requires the defendant's contacts with the forum state to be "continuous and systematic." *Davenport Mach. & Foundry Co. v. Adolph Coors Co.*, 314 N.W.2d 432, 434 (Iowa 1982) (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 72 S. Ct. 413, 418, 96 L. Ed. 485, 492 (1952)). Addison concedes Knight's contacts are not sufficient for general jurisdiction. Thus, we consider whether Knight's contacts satisfy the due process requirements for specific jurisdiction.

In support of its contention personal jurisdiction does not exist, Knight notes it does not maintain an office or own any property in the state of Iowa. None of its attorneys is licensed to practice law in Iowa and none resides in Iowa. Knight claims its contacts with Iowa are simply too attenuated to satisfy the Due Process Clause. Moreover, it claims the alleged malpractice did not "arise out of or relate" to these contacts.

Addison, on the other hand, argues the regular communication between the two parties concerning Knight's representation of Addison's insureds over many years is sufficient for personal jurisdiction. It contends the underlying action arose out of or relates to these contacts.

We find the district court correctly held it had personal jurisdiction over Knight. The parties entered into a contract for services that lasted for ten years. The written guidelines for the attorneys to follow envisioned close supervision by Addison and constant communication between the two parties. For example, all settlement demands were required to be immediately communicated to Addison in writing. All offers to settle made on behalf of Addison's insureds had to be approved by Addison. Legal research in excess of two hours required Addison's preapproval. Prior to paying for any research time, a memorandum outlining the facts, law, and conclusion had to be submitted to Addison. All depositions, with the exception of the plaintiff, had to be discussed with Addison prior to scheduling. Within twenty-one days of any motion, deposition, or other development, a report had to be submitted to Addison including copies of any pleadings or other legal documents. During trials, daily verbal reports from Knight had to be made to Addison's management. Needless to say, the Knight attorneys had extensive contact with Addison over the years.

While the original agreement was created in Illinois, the relationship between the parties continued unabated after Addison moved to Iowa. Since the move, Addison paid Knight approximately $800,000 for its services, which indicates Knight represented many of Addison's insureds over the years. *See Hager*, 440 N.W.2d at 607 (finding Iowa had personal jurisdiction over nonresident defendants who entered into "a contractual relationship which lasted several years and involved frequent contacts by

telephone and mailed correspondence, together with substantial oversight by the [plaintiff's] home office in Iowa").

The relatively small number of personal visits by Knight representatives to Addison and United Fire's headquarters in Cedar Rapids is not significant. *See Cascade Lumber Co. v. Edward Rose Bldg. Co.,* 596 N.W.2d 90, 93 (Iowa 1999) (holding "multiple phone conversations" between an Iowa company and a nonresident company were sufficient to confer personal jurisdiction over the nonresident company); *Bankers Trust Co. v. Fidata Trust Co. N.Y.,* 452 N.W.2d 411, 414 (Iowa 1990) (stating "[t]he nonresident corporation's physical presence within the forum state is not essential to a finding of sufficient minimum contacts; contacts by telephone or mail may suffice"). In this modern era, business is typically conducted by telephone, facsimile, mail, and electronic mail. *Hager,* 440 N.W.2d at 607 (stating " 'it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted' " (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 476, 105 S. Ct. 2174, 2184, 85 L. Ed. 2d 528, 543 (1985))). The nature and quality of Knight's communications to Iowa were such that the law firm "should have reasonably anticipated being haled into state court." *Bankers Trust,* 452 N.W.2d at 414 (citing *World-Wide Volkswagen,* 444 U.S. at 297, 100 S. Ct. at 567, 62 L. Ed. 2d at 501). Rather than the ministerial-type contacts which were found not to be sufficient for personal jurisdiction in *Bankers Trust,* Knight's contacts with Iowa were high quality communications which assisted Addison in making critical decisions concerning litigation.

Moreover, we find the alleged malpractice arose out of or was related to these contacts. Knight acknowledges communicating with Addison in

Cedar Rapids concerning the Knoedler case. Knight filed a notice of appeal on Addison's behalf. It would have only done so at Addison's direction. Neither party alleges Addison representatives traveled to Des Plaines to discuss the case. Thus, we must conclude the directive to file the appeal occurred with Addison representatives in Cedar Rapids and Knight representatives in Des Plaines.

Certainly Illinois has an interest in this lawsuit since it involves an Illinois resident and requires the application of Illinois law. Nevertheless, Iowa has a " 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Aquadrill*, 558 N.W.2d at 393. Thus, Iowa's interest is at least equal to that of Illinois and Iowa provides as convenient a forum. *Cascade Lumber*, 596 N.W.2d at 93.

Because Knight voluntarily entered into a long-term relationship with Addison, which required substantial, ongoing connections with the company's headquarters in Cedar Rapids, Iowa, we cannot say the " 'quality and nature' " of its relationship to Addison is "random," "fortuitous," or "attenuated." *Burger King*, 471 U.S. at 480, 105 S. Ct. at 2186, 85 L. Ed. 2d at 545–46 (quoting *Hanson*, 357 U.S. at 253, 78 S. Ct. at 1240, 2 L. Ed. 2d at 1298). The Supreme Court in *Burger King* said:

> Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id.* at 475–76, 105 S. Ct. at 2184, 85 L. Ed. 2d at 542–43 (citations omitted). Under the circumstances of this case, we find it reasonable for Knight to be

called to answer in an Iowa court. *Id.* at 480, 105 S. Ct. at 2186, 85 L. Ed. 2d at 546.

### B.    Venue

Knight argues that even if the district court has personal jurisdiction over it, Linn County is not the proper venue. We find this argument has no merit.

Venue is statutory. Iowa Code section 616.18 (2003) provides:

> Actions arising out of injuries to a person or damage to property may be brought in the county in which the defendant, or one of the defendants, is a resident or in the county in which the injury or damage is sustained.

Since Knight is not a resident of Iowa, the issue is whether Addison's injury or damage was "sustained" in Linn County. Knight draws our attention to *Johnson v. Nelson,* 275 N.W.2d 427 (Iowa 1979). There, an Iowa resident brought a legal malpractice suit against an Iowa attorney for allowing his case to be dismissed for want of prosecution. *Johnson,* 275 N.W.2d at 428. We held the injury or damage to the plaintiff's lawsuit was sustained in Polk County, where the case was dismissed, rather than Clay County, where the plaintiff resided. *Id.* at 431.

We find *Johnson* not to be controlling because both parties were two Iowa residents. If we extended *Johnson* to the present case, we would be left with the odd result of personal jurisdiction over a defendant without a county in the state proper for venue. Such an absurd result is contrary to the legislature's intent to subject nonresidents to the jurisdiction of this state's courts to the outer limits of the Due Process Clause of the United States Constitution. *State v. Schultz,* 604 N.W.2d 60, 62 (Iowa 1999) (stating "we will not construe a statute in a way which creates an impractical or absurd result"). Thus, we find the damage alleged to have been suffered by Addison took place, at least in part, in Linn County.

### C.     Forum Non Conveniens

Alternatively, in its motion to dismiss, Knight asked the district court to transfer the case to Cook County, Illinois under the doctrine of forum non conveniens.  Although the district court acknowledged at the outset of its ruling that forum non conveniens was an issue to be decided, it did not rule on the matter and Knight did not file a motion to enlarge.  Consequently, Addison argues the issue was not preserved for appeal.  We have previously said "[w]hen a trial court fails to rule on an issue properly raised, the party raising the issue must file a motion asking the court for a ruling in order to preserve the issue for appeal."  *Benavides v. J.C. Penny Life Ins. Co.*, 539 N.W.2d 352, 356 (Iowa 1995) (citing *State Farm Mut. Auto. Ins. Co. v. Pfibsen*, 350 N.W.2d 202, 206 (Iowa 1984)).

Knight argues error was preserved because the district court *implicitly* rejected forum non conveniens.  We disagree.  The only reference to convenience in the district court's decision was in the context of its analysis of personal jurisdiction.  The use of the word "convenience" in the jurisdictional analysis is insufficient to preserve error in regards to the doctrine of forum non conveniens.  The court's failure to rule on this issue precludes our review.  Although the district court weighed "convenience of the parties" (the fifth factor of any personal jurisdiction analysis, *see Larsen*, 296 N.W.2d at 788), forum non conveniens requires a separate analysis which we will not do for the first time on appeal.[2]

---

[2]In *In re Marriage of Kimura*, 471 N.W.2d 869 (Iowa 1991), we explained the proper analysis for forum non conveniens:

> [T]he moving party must show . . . that the relative inconveniences are so unbalanced that jurisdiction should be declined on an equitable basis.  Factors that bear on this determination include the following:  the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the possibility of view of the premises, if view would be appropriate to the action; the enforceability of the judgment if one is

## IV.    Conclusion

We find Knight's contacts with Iowa are sufficient to confer personal jurisdiction on the district court and Linn County is proper for venue.  We affirm the district court.

**AFFIRMED.**

---

obtained; and all other practical problems that make trial of a case easy, expeditious, and inexpensive. All of these factors pertain to the private interest of the litigant.

Factors of public interest are also considered. They include the administrative difficulties for courts, trial in the forum that is the home of the state law which governs the case, and the burden of jury duty imposed on citizens of a forum with no relation to the litigation. Residency of the plaintiff is also considered but only as one of the many factors in the balancing process.

*In re Marriage of Kimura*, 471 N.W.2d at 878–79 (citations omitted).