# IN THE COURT OF APPEALS OF IOWA

No. 17-1663
Filed May 1, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**NICHOLAS CAGLE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, John G. Linn,

Judge.

The defendant appeals his conviction for sexual abuse in the second

degree. **AFFIRMED.**

William Monroe of Law Office of William Monroe, Burlington, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee.

Considered by Tabor, P.J., Bower, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

Nicholas Cagle appeals his conviction of sexual abuse in the second degree based on error in evidentiary rulings and ineffective assistance of trial counsel. He asserts the court erroneously admitted the out-of-court forensic video interview of the child witness, J.C. Additionally, he maintains his trial counsel provided ineffective assistance when counsel failed to object to (1) the prosecutor's alleged misconduct during the trial, (2) admission into evidence of the out-of-court forensic video, and (3) claimed improper evidence of vouching for the credibility of J.C. Upon our review of the issues, we find neither error by the court nor ineffective assistance by Cagle's counsel and affirm.

I. Factual background.

"Viewing the trial evidence in the light most favorable to the jury's guilty verdict[], the jury could have found the following facts." *State v. Romer*, 832 N.W.2d 169, 172–73 (Iowa 2013). Four-year-old J.C. was on Cagle's bed and wearing his "Batman jammies." Defendant Cagle showed him a cellphone video depicting a "big kid" in the rain who took off a girl's shirt, started "licking her booboos,"[1] put the "big thing" in the girl's mouth, then "took it out" and "put it in her." Then Cagle and J.C. started "touching" and "wiggling" their "weewees"[2] "up and down." In J.C.'s words, Cagle "peed" on J.C.'s hand. The "pee" was "white" and came out of his Cagle's "weewee." Afterwards, Cagle was "angry" and made grunting sounds. Cagle told J.C. not to tell anyone.

---

[1] When asked what a "booboo" is, J.C. pointed at his chest and said he had a "tiny booboo" when pointing at or grabbing his pectoral.
[2] J.C.'s mother testified that he uses the word "wee-wee" for "penis."

J.C.'s mother picked J.C. up from Cagle's home. She did not think anything out of the ordinary, except that J.C. "didn't have any underwear on." Cagle told her that J.C. had wet the bed. A few days later, J.C. spoke with a forensic interviewer at the Mississippi Valley Child Protection Center (CPC). The interview was recorded. J.C. recounted the above-described event in age-appropriate vocabulary: "Q. When [Cagle] peed on your hand, were you touching his weewee? A. Yeah. Q. What were you touching it with? A. My hand."

At trial, J.C. (now five years old) said he did not remember much about the last time he stayed with Cagle. He did say that his Cagle "pee[d]" on his hand. There had been little or no discord between J.C., his mother, and Cagle. J.C.'s mother said there were no custody issues, that she and Cagle had remained friends, and she thought they were both "trying to do what's best for . . . [J.C.]." According to Cagle's wife, J.C. "looked up to [Cagle] very much; [Cagle] was his idol."

A forensic analysis of Cagle's cell phone revealed pornographic videos, including one "out in the rain [that involved] sucking on a female's breasts and then leading into intercourse." At least one of the videos also showed oral sex.

II. Procedural background.

On September 8, 2016, the Des Moines county attorney filed a trial information charging Cagle with sexual abuse in the second degree in violation of Iowa Code sections 709.1(3); 709.3(1)(b); and 709.3(2) (2018), a class "B" felony. Cagle's counsel filed a written arraignment and plea of not guilty. A jury trial commenced on August 29, 2017.

After the jury was selected and sworn and before the opening statement, the court directed the prosecutor to read to the jury the trial information and to advise the jury of Cagle's plea. The prosecutor then read the trial information, starting with the caption and including the statement "in the name of and by the authority of the State of Iowa" and, "This is a true information. Amy K. Beavers, Des Moines County Attorney, by Todd E. Chelf, senior assistant county attorney." The prosecutor then stated to the jury: "To this charge, the defendant has pled not guilty." Cagle's trial counsel did not object to these proceedings.

During the State's case-in-chief, the prosecution offered, and the court admitted over a defense hearsay objection, the video of J.C.'s pretrial forensic interview at CPC. The State called the forensic interviewer as a witness. Cagle claims the witness gave "vouching" testimony for J.C., to which his trial counsel failed to object. During closing argument, the prosecutor made the statement to the jury that J.C. testified, "[Cagle] peed on my hand." Cagle contends this was a misstatement of the evidence and his trial counsel failed to object to prosecutorial misconduct.

On August 30, the jury returned a guilty verdict. Cagle's counsel filed a motion for new trial, which was denied. On October 16, Cagle was sentenced to twenty-five years' confinement. He filed his notice of appeal on October 19.

III. Discussion.

A. Ineffective assistance of counsel.

On appeal, Cagle concedes error was not preserved on certain claims, requiring them to be analyzed as allegations of ineffective assistance of counsel. Claims of ineffective assistance are a recognized exception to the error-

preservation rule in direct appeals. *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006). When counsel fails to preserve error at trial, a defendant can have the matter reviewed as an ineffective-assistance-of-counsel claim. *State v. Brubaker*, 805 N.W.2d 164, 170 (Iowa 2011). We can reach an ineffective-assistance-of-counsel claim on a direct appeal if the record is sufficient to reach it. *Id.* If the record is insufficient to allow for a review on direct appeal, we do not reach the issue on direct appeal and allow the defendant to raise the claim in a separate postconviction-relief action. *State v. Harris*, 919 N.W.2d 753 (Iowa 2018).

The burden of proof to establish by a preponderance of evidence a claim of ineffective assistance of counsel is on the defendant. *Ondayog*, 722 N.W.2d at 784. Cagle must show that (1) his attorney failed to perform an essential duty, and (2) prejudice resulted to the extent that it denied him a fair trial. *See id.; see also Strickland v. Washington*, 466 U.S. 668, 694 (1984). To prevail on a claim of prosecutorial misconduct, the defendant must show both the misconduct and resulting prejudice. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

B. Standard of review.

Ineffective-assistance claims are reviewed de novo. *State v. Virgil*, 895 N.W.2d 873, 879 (Iowa 2017).

> C. Whether defense counsel was ineffective for not objecting to the prosecutor's reading of the trial information and the manner in which he advised the jury of Cagle's plea of not guilty.

Cagle complains that the assistant county attorney committed not just prosecutorial error, but prosecutorial misconduct[3] by reading the entire contents of

---

[3] Prosecutorial misconduct is when a "'prosecutor intentionally violates a clear and unambiguous obligation or standard imposed by law, applicable rule or professional

the trial information to the jury and the manner in which the jury was informed of the defendant's not-guilty plea. The contention is based on Iowa Rule of Criminal Procedure 2.19(1)(a)(1), which provides: "(1) *Reading indictment and plea.* The clerk or prosecuting attorney must read *the accusation* from the indictment or the supplemental indictment, as appropriate, and *state the defendant's plea to the jury.*"[4] (emphasis added). The issue involves what constitutes the accusation and the manner in which the prosecutor is to advise the jury of the defendant's plea.

Specifically, the record shows that the prosecutor read the entire trial information from the caption to the endorsement of "A True Information" and as signed by the assistant county attorney.[5] Cagle claims the reading of the entire trial information was error as it exceeds the "accusation" called for by the rule. He argues that the reference to "accusation" limits the county attorney to reading only the charge against the defendant—nothing more. Cagle also argues that the county attorney, in reading the entire trial information, stated it was a "true" information. He contends that by doing so, the county attorney impermissibly

---

conduct,' as well as 'those situations where a prosecutor recklessly disregards a duty to comply with an obligation or standard.'" *State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016) (citation omitted).

In addressing fair-trial challenges based on prosecutorial behavior, we first determine whether the prosecutor violated a duty to the defendant. If so, we consider whether that violation was intentional or reckless. *Id.* (distinguishing between claims of prosecutorial error and prosecutorial misconduct). An intentional or reckless violation amounts to prosecutorial misconduct while an unintentional violation amounts only to prosecutorial error. *Id.* We then determine whether the error caused prejudice. *State v. Plain*, 898 N.W.2d 801, 818–19 (Iowa 2017).

[4] This has been the law since 1860: "The jury having been empaneled and sworn, the trial must proceed in the following order: 1. The clerk or district attorney must, if the indictment be for a felony, read it, and state the defendant's plea to the jury." Iowa Code ch. 212, § 4785(1) (1860).

[5] As Iowa Rule of Criminal Procedure 2.5(5) provides, a trial information may be used instead of a grand jury indictment. For this reason, we substitute "information" or "trial information" where appropriate for indictment.

stated that the allegation of the charge was "true" and improperly influenced the jury. In addition, the county attorney stated to the jury: "To this charge, the defendant has pled not guilty." Cagle contends that the prosecutor failed to state that the not guilty plea was "certified true and correct." Because his trial counsel failed to object to the county attorney's claimed misconduct, Cagle urges that his counsel was ineffective and he is entitled to a new trial.

Iowa Rules of Criminal Procedure 2.4 and 2.5 regarding indictment and trial information give us guidance. The trial information finds its origins in the grand jury indictment. *See* Iowa R. Crim. P. 2.5(5). Historically, the Iowa Code required that "an indictment, when found by the grand jury, and indorsed 'a true bill,' by the foreman, must be presented to the court by the foreman, in their presence, and marked 'filed,' by the clerk." *State v. Axt*, 6 Iowa 511, 512 (1858).

The rule now provides: "All indictable offenses may be prosecuted by a trial information. . . . The county attorney shall have the authority to file such a trial information except as herein provided or unless that authority is specifically granted to other prosecuting attorneys by statute." Iowa R. Crim. P. 2.5(1). The rule goes on to require:

> The prosecuting attorney shall, at the time of filing such information, also file the minutes of evidence of the witnesses which shall consist of a notice in writing stating the name and occupation of each witness upon whose expected testimony the information is based, and a full and fair statement of the witness' expected testimony.

Iowa R. Crim. P. 2.5(3). The minutes of evidence are appended to the trial information as they must be presented to the magistrate or judge per rule 2.5(4) for review and approval before the trial information may be filed with the clerk of court. *See* Iowa R. Crim. P. 2.11(6)(c)(1) (providing a defendant may move to

dismiss a trial information "[w]hen the minutes of evidence have not been filed with the information").

The rule further provides: "An information shall be endorsed 'a true information' and shall be signed by the prosecuting attorney." Iowa R. Crim. P. 2.5(2). And the rule concludes:

> The information shall be drawn and construed, in matters of substance, as indictments are required to be drawn and construed. The term "indictment" embraces the trial information, and all provisions of law applying to prosecutions on indictments apply also to informations, except where otherwise provided for by statute or in these rules, or when the context requires otherwise.

Iowa R. Crim. P. 2.5(5).

Finally, the issue here appears answered by the following rule:

> *An indictment is an accusation in writing*, found and presented by a grand jury legally impaneled and sworn to the court in which it is impaneled, charging that the person named therein has committed an indictable public offense.

Iowa R. Civ. P. 2.4(1) (emphasis added). A county attorney's trial information is to be considered and construed in the same manner as an indictment. *State v. Williams*, 193 N.W.2d 529, 530 (Iowa 1972). Reading these rules together, the trial information, the same as an indictment, is "an accusation." The county attorney reading the entire trial information complied with the rules and did not commit misconduct or error, so Cagle's trial counsel was not obligated to object. Thus, counsel did not breach a duty to Cagle, and counsel did not provide ineffective assistance. *See Brubaker*, 805 N.W.2d at 171 ("We will not find counsel incompetent for failing to pursue a meritless issue.").

That the rule provides the prosecuting attorney is to read "the accusation from the indictment" appears to be a limit on what should be read. Under the rules,

at the time the trial information is filed, the county attorney is to file the list of witnesses and minutes of evidence. These are appended to the trial information, but are not to be read to the jury as part of reading the trial information. Rule 2.19(1)(a)(1) makes this clear by stating the clerk or prosecutor is to read only "the accusation from the indictment."[6]

We also point out that the prosecutor reading the trial information, which contains the statement it is a "true information," is not making a statement that the contents are true, but that the document is what it purports to be—a trial information prepared by the prosecuting authority. Cagle's argument that reading to the jury that it was a "true information" constituted prosecutorial misconduct has no merit. Reading the trial information to the jury is required by the rules of criminal procedure and complying with the rule is not misconduct.

Further, we note that the trial court instructed the jury at the end of the trial regarding the trial information, stating in Instruction No. 2, "The Trial Information is the document that formally charges the defendant with a crime and is merely the method by which the defendant is brought into court for trial. It is not evidence." In light of this instruction, the prosecutor stating that this was a "true information" was not prejudicial. *See also State v. Ayers*, No. 17-1054, 2018 WL 4360900, at *2 (Iowa Ct. App. Sept. 12, 2018) (finding the prosecutor's recitation of "true information" when reading the trial information to the jury did not amount to *Strickland* prejudice).

---

[6] We also note that the county attorney did not read or advise the jury that the trial information had been read and approved by a judge as provided in Iowa Rule of Criminal Procedure 2.5(4). To so advise would exceed the rule and likely be prejudicial.

Cagle next complains the prosecutor committed misconduct in reading that portion of the trial information that stated it was filed "in the name and by the authority of the State of Iowa." This language mirrors the Iowa Constitution provision: "The style of all process shall be 'The State of Iowa' and all prosecutions shall be conducted in the name and by the authority of the same."[7] Iowa Const., art. V, § 8. "The county attorney shall: 1. Diligently enforce or cause to be enforced in the county, state laws and county ordinances, violations of *which may be commenced or prosecuted in the name of the state*, county, or as county attorney, except as otherwise provided." Iowa Code § 331.756 (emphasis added). Since the founding of our state, prosecution of a crime has been in the name of the state. The setting forth of this language in the trial information is mandated by the Iowa Constitution and is implemented by the statute. Again, we find no misconduct by the prosecutor in reading this phrase to the jury.[8] And again, we find no prejudice in light of the jury instruction regarding the purpose of the trial information.

In one last attempt to show prosecutorial misconduct, Cagle argues that the county attorney, in advising the jury of Cagle's plea, stated that the defendant had pled not guilty, but failed to advise the jury that such plea was "certified true and correct." Rule 2.19(1)(a)(1) provides only that the prosecutor "*state the defendant's plea to the jury*." The court instructed the jury in instruction no. 4, that Cagle had entered a plea of not guilty and this is a complete denial of the charge, which placed the burden on the State to prove him guilty beyond a reasonable

---

[7] This article of the Iowa Constitution has been in place since 1857.
[8] We also note that the trial information filed in this case is consistent with the form found in Iowa Rule of Criminal Procedure 2.37, Form 4.

doubt. We find the county attorney did not commit misconduct in not stating to the jury that Cagle's plea of not guilty was "certified true and correct." The rule does not require it, and the court's jury instruction eliminated any possible claim of prejudice.

Cagle's trial counsel was not ineffective for failing to object where the objection would not have been sustained. *See State v. Shanahan*, 712 N.W.2d 121, 138 (Iowa 2006) (ruling where trial court could properly overrule objection, trial counsel did not fail to perform an essential duty when did not object); *State v. Liddell*, 672 N.W.2d 805, 809 (Iowa 2003) (recognizing the failure to prove either prong of the *Strickland* test is fatal to ineffective-assistance-of-counsel claims).

D. Whether trial counsel was ineffective for failing to object to the court admitting into evidence the DVD of the forensic interview of J.C.?

1. Error preservation.

The parties agree that a hearsay objection to the admission of the DVD was preserved. They also agree that the lack-of-foundation and Confrontation Clause objections were not preserved and can only be reviewed as an allegation of ineffective assistance.[9] *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *see also Ondayog*, 722 N.W.2d at 784. In this division we will first consider whether counsel was ineffective for not raising lack-of-foundation and

---

[9] We note in our review of the trial record that Cagle's trial counsel, at the same time as he raised the hearsay objection to the DVD, also stated, "And it's interference with Mr. Cagle's right to confront the victim, the accuser." Apparently, the parties agree this was insufficient to preserve the Confrontation Clause issue. We will address the issue as the parties agree—under the ineffective-assistance-of-counsel framework.

Confrontation Clause objections and will then address the hearsay objection that was made at trial.

   2.  Lack of foundation.

Cagle's appellate counsel contends that the record with the court, made outside the presence of the jury, shows that the sponsoring witness, Amy Kuboushek, the person who interviewed and made the forensic video of J.C., acknowledged not being shown the video before testifying and, thus, could not lay the proper foundation for its admission.[10]  We have reviewed the record made outside the presence of the jury as well as that before the jury.  The record shows that Kuboushek testified she was the person who conducted the recorded interview, was familiar with the DVD, maintained custody of it, and that it fairly and accurately represented the interview with J.C.  The prosecutor specifically pointed out that he had not asked foundation questions of the witness in front of the jury until after the out-of-the-presence-of-the-jury hearing as he was cautious not to advise the jury of the video before he had a ruling from the court on its admissibility.  After the hearing, once back before the jury, the record shows adequate questions were posed and answered by the sponsoring witness to establish foundation that the DVD exhibit was fair and accurate.  *See State v. Deering*, 291 N.W.2d 38, 40 (Iowa 1980) ("A proper foundation for the admission into evidence of a motion picture film demands only that the fidelity of the film's portrayal be established.

---

[10] We do not like to comment on attorney conduct, but appellant's brief takes such liberty with the record in this appeal that we feel compelled to do so.  The appellant counsel's representation of what the record proves is so far removed from what the actual record states as to border on unethical conduct.  We recognize appellate counsel was not trial counsel and had to familiarize himself with the record for this appeal.  But the representations to this court of what is in the record is not borne out by our reading of it.

When, as here, a witness to the event purportedly depicted by the film testifies that the film accurately portrays that event, a foundation has been established upon which the trial court, in the exercise of its sound discretion, may admit the film into evidence.").

We find the record here adequate to review the ineffective-assistance-of-counsel claim on this issue. Since the foundation for admission of the DVD was adequate and a lack-of-foundation objection would have been overruled, Cagle's trial counsel was not ineffective for not making the objection. *See State v. Musser*, 721 N.W.2d 734, 752 (Iowa 2006) ("Counsel has no duty to raise an issue or make an objection that has no merit.").

    3. Confrontation Clause.[11]

At the same time he lodged the hearsay objection to the forensic video, the record shows Cagle's trial counsel also mentioned "confrontation." However, Cagle in his appeal brief, concedes the Confrontation Clause was not preserved and argues it as an ineffective-assistance claim. Thus, we address this issue for ineffective assistance.

The Confrontation Clause issue is easily resolved. "[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004); *accord State v. Rojas*, 524 N.W.2d 659, 664 (Iowa 1994) ("The Confrontation Clause was satisfied here because the

---

[11] We note that Cagle does not set out a separate section identified as a Confrontation Clause claim, but he references the Confrontation Clause issue within argument in his brief. The State specifically addresses the Confrontation Clause claim in a separate division of its brief. We find it appropriate to separately address it here.

hearsay declarant actually testified in court and was available to be cross-examined."); *State v. Froning*, 328 N.W.2d 333, 336 (Iowa 1982) ("Where the declarant whose testimony the state wishes to introduce is present at trial, gives his sworn testimony at trial, and is subject to cross-examination by the defense as happened at the petitioner's trial, the Confrontation Clause is satisfied."); *see also State v. Hopwood*, No. 13-1479, 2015 WL 6509746, at *5 (Iowa Ct. App. Oct. 28, 2015) (rejecting identical argument on virtually identical facts in child-sex-abuse case). Since J.C. was deposed and was cross-examined by defense when he testified at trial, the Confrontation Clause was satisfied and Cagle's trial counsel was not ineffective for not objecting on this basis.

    4. Hearsay objection.

As noted above, Cagle's trial counsel made the hearsay objection during trial, so we review this for error and not as an ineffective-assistance claim. We review hearsay rulings for correction of errors at law and will reverse the admission of hearsay evidence as prejudicial unless the contrary is shown. *State v. Elliott*, 806 N.W.2d 660, 667 (Iowa 2011). All other evidentiary objections (e.g., lack of foundation) are reviewed for abuse of discretion.[12] *Id.*

Cagle claims the DVD of J.C.'s forensic interview was hearsay and inadmissible. *See* Iowa R. Evid. 5.802. Inadmissible hearsay is considered to be

---

[12] The State in its appeal brief recognizes the current standard of review for hearsay is for correction of errors at law but asks the court to revert back to the prior standard of abuse of discretion that is applied to other evidentiary issues, citing *State v. Weaver*, 554 N.W.2d 240, 247 (Iowa 1996). The Supreme Court transferred this case to us. We are not at liberty to overrule or set aside Supreme Court precedent; we leave the task of overruling precedent to our supreme court. *See State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) (acknowledging that both the district court and the court of appeals had "properly relied on . . . applicable precedent" and noting that "it is the role of the supreme court to decide if case precedent should no longer be followed").

prejudicial to the non-offering party unless otherwise established. *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006). Hearsay is not admissible unless any of the following provide otherwise: the Constitution of the State of Iowa; a statute; these rules of evidence; or an Iowa Supreme Court rule. *Id.*

Cagle argues that the trial court advised counsel it was relying on the case of *State v. Castaneda*, 621 N.W.2d 435, 446 (Iowa 2001) in determining admissibility of the video. *Castaneda* is based on the declarant not being available to testify at trial. 621 N.W.2d at 447. Cagle claims that since J.C. was available and testified at the trial, *Castaneda* did not provide a legal basis for the video's admission and his hearsay objection should have been sustained. We are not limited on appeal to the trial court's basis for admission of an exhibit. *Cascade Lumber Co. v. Edward Rose Bldg. Co.*, 596 N.W.2d 90, 92 (Iowa 1999) ("[W]e are not bound, however, by the trial court's application of legal principles.")

On appeal, the State contends that the forensic video was admissible under Iowa Code section 915.38(3), the residual hearsay exception in Iowa Rule of Evidence 5.807,[13] and *Rojas*, 524 N.W.2d at 662. Section 915.38(3) provides:

> The court may upon motion of a party admit into evidence the recorded statements of a child, as defined in section 702.5, describing sexual contact performed with or on the child, not otherwise admissible in evidence by statute or court rule if the court determines that the recorded statements substantially comport with the requirements for admission under rule of evidence 5.803(24) or 5.804(b)(5).

---

[13] Before 2009, the Iowa Rules of Evidence included one residual exception for available declarants in rule 5.803(24) and another for unavailable declarants in rule 5.804(b)(5). As part of the 2009 restyling, and to partially conform Iowa's rules to the Federal Rules of Evidence, both the available-declarant and unavailable-declarant residual-hearsay exceptions were combined into a single rule: 5.807. *See* 7 Laurie Kratky Doré, *Residual Exception*, *Iowa Practice Series: Evidence* § 5.807:1 (2018 ed.). "[C]ases decided under either former Iowa Rule 5.803(24) or 5.804(b)(5) should provide authority with respect to the interpretation of the new Iowa Rule 5.807." *Id.*

To invoke the residual-hearsay exception, the offering party must meet five requirements: trustworthiness, materiality, necessity, service of the interests of justice, and notice. *Rojas*, 524 N.W.2d at 662–63. We have reviewed the trial record and particularly the admitted exhibit—the recorded forensic interview—and find all of the *Rojas* factors were sufficiently met here for its admission. The district court did not err in overruling Cagle's hearsay objection and admitting the exhibit. *See State v. Pantaleon*, No. 15-0129, 2016 WL 740448, at *2 (Iowa Ct. App. Feb. 24, 2016).

Cagle also reiterates his earlier objection to the forensic video—that the CPC interviewer was associated with the State and the interview was thus part of the "government investigation" and should result in the video not being admissible. Cagle did not preserve this point for appeal. Even if he had, we agree with earlier cases that the CPC interviewer is not part of the law-enforcement investigation. *See State v. Whitman*, No. 06-0780, 2007 WL 2963660, at *2 (Iowa Ct. App. Oct. 12, 2007) (approving admission of interview at CPC, noting "[t]he dual purpose of medical treatment and investigation does not defeat the admissibility of the evidence"). This argument forms no basis to keep J.C.'s forensic interview out of evidence.

E. Whether trial counsel was ineffective for failing to object to the vouching evidence for the veracity of J.C.?

Cagle raises the vouching claim as ineffective assistance of counsel, complaining his trial attorney failed to object to testimony that constituted an impermissible legal opinion and allegedly vouched for the veracity of J.C. Therefore, our review on this issue is de novo. *State v. Wills*, 696 N.W.2d 20, 22

(Iowa 2005). As instructed by our supreme court in *State v. Dudley,* we must break down each statement Cagle "claims as objectionable to determine if the State crossed the line." 856 N.W.2d 668, 678 (Iowa 2014).

Amy Kuboushek is the forensic interviewer who conducted the recorded interview with J.C. and testified for the State at trial. Cagle's first complaint is that Kuboushek testified: "[A] forensic interview is a *legally sound* way of gathering information, in this case, children is who I interview." (Emphasis added.) Cagle argues this testimony constituted both a legal opinion which the witness was not qualified to render and indirectly vouched for J.C.'s credibility, which required an objection by his trial counsel.

Expert witnesses may not opine on whether a child victim is telling the truth or whether they believe the abuse actually happened. *See, e.g.*, *id.* at 676–77 ("We again reaffirm that we are committed to the legal principle that an expert witness cannot give testimony that directly or indirectly comments on the child's credibility."); *State v. Brown*, 856 N.W.2d 685, 689 (Iowa 2014); *State v. Jaquez*, 856 N.W.2d 663, 666 (Iowa 2014). It is for the jury to determine the credibility of the child witness. In addition, witnesses are not permitted to give legal opinions.

> In general an expert witness is not permitted to state a legal conclusion. This rule is modified somewhat if a legal issue is raised in such a way as to become a necessary operative fact; when however the legal conclusion is a rule of decision to be applied by the judge or jury in deciding the case, it is not a proper subject for expert testimony.

*Terrell v. Reinecker*, 482 N.W.2d 428, 430 (Iowa 1992) (citations omitted).

The State contends that Kuboushek was only describing an interview process as "legally sound," which was neither a legal opinion nor did it connote

Cagle's guilt or support the child's veracity. We agree with the State. Her use of the qualifier that the interview was "legally sound," although improvident, was couched with her testimony that she is employed by the Mississippi Valley CPC, which is nationally accredited by the National Children's Advocacy Center, and she followed the national protocol to conduct the interview. This testimony was not truly a legal opinion. *See Heinz v. Heinz*, 653 N.W.2d 334, 342 (Iowa 2002) (finding expert testimony was not a legal conclusion made for the trier of fact.) It goes more to reliability of the interview process for admission purposes, which was an evidentiary ruling to be made by the court, than to the veracity of the interview, which was for the jury.

We also find Kaboushek's comment did not vouch for J.C. An expert witness may testify to the general practices used by the interviewer to interview the child witness. *See State v. Westmoreland*, No. 15-1951, 2017 WL 512479, at *4 (Iowa Ct. App. Feb. 8, 2017). We find Cagle's trial counsel was not ineffective for failing to object to this evidence.

Next Cagle argues that his trial counsel should have objected when Kaboushek said she was "part of the investigation," even though she later clarified that she was "not an investigator." He asserts that it was improper to "place . . . this alleged 'neutral' expert witness on the side of the State." Cagle fails to cite legal authority in support of this proposition, and we deem this issue waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

Cagle next contends that his counsel failed to object to Kaboushek testifying, "It is very common for children, young children to respond very differently

[to sexual assaults than a teenager or adult]." He argues this statement attested to what conclusion the jury should reach about J.C.'s response to the alleged sexual assault, how he acted, and what his affect was during the forensic interview. *See State v. Myers*, 382 N.W.2d 91, 97 (Iowa 1986) (stating experts will not be allowed to opine on matters "that either directly or indirectly renders an opinion on the credibility or truthfulness of a witness").

Upon our review of Kuboushek's testimony, we find it fit within the permissible opinion an expert may testify about why a "child's recollection of the events may seem inconsistent," and "why child[] victims may delay reporting their sexual abuse" because it can "assist the jury in understanding some of the seemingly unusual behavior child victims tend to display." *Dudley*, 856 N.W.2d at 676–77. That is what Kuboushek did here. She did not tell the jury her opinion about whether the abuse happened but instead provided generalized information that would allow jurors to make their own conclusion. The interviewer's only comment on the content of J.C.'s statements in the interview was that he used "age-appropriate" language, which is a permissible observation. *See State v. Tjernagel*, No. 15-1519, 2017 WL 108291, at *9–10 (Iowa Ct. App. Jan. 11, 2017). Cagle's counsel had no duty to object to this line of questioning because testimony about the general symptoms of child-sex-abuse victims is permissible. *Simpson v. State*, No. 15-1529, 2017 WL 1735615, at *5 (Iowa Ct. App. May 3, 2017) (providing an expert is "allowed to testify to the classic characteristics that are exhibited after people have experienced a trauma" (quoting *State v. Gettier*, 438 N.W.2d 1, 4 (Iowa 1989)).

Finally, Cagle contends his trial counsel failed to object to Kuboushek testimony it was possible for a child to be legally sexually assaulted but not think the assault a big deal and that this frequently happens to small children. He claims this was also improperly vouching for the credibility of J.C. by explaining to the jury how to view the way J.C. presented during the forensic interview. Again, we find that this testimony properly fit within that which is permissible under *Dudley*. *See State v. King*, No. 16-1615, 2017 WL 6039990 at *6 (Iowa Ct. App. Dec. 6, 2017) (describing generally what expert witness interviewer may testify to regarding interview). Kuboushek did not cross the "fine line" of vouching for J.C. Cagle's counsel was not ineffective since an objection would not be sustained.

IV. Conclusion.

Upon our review of all issues raised by Cagle, we find his trial counsel was not ineffective in not objecting to the prosecutor's reading of the trial information or in advising of the defendant's not-guilty plea, in failing to lodge foundation and confrontation objections to the admission of the child witness's video recorded pretrial statement, or in failing to object to claimed vouching testimony, and the trial court did not err in overruling the defense's hearsay objection to the video.

**AFFIRMED.**