AQUADRILL, INC., Appellee,

v.

ENVIRONMENTAL COMPLIANCE CON-
SULTING SERVICES, INC., and Clau-
dia A. Wright, Defendants,

and

W. Thomas McKEE, Appellant.

No. 95–1537.

Supreme Court of Iowa.

Jan. 22, 1997.

Martin A. Diaz of Tom Riley Law Firm,
P.C., Iowa City, for appellant.

Steven E. Ballard of Leff, Haupert, Traw
& Willman, L.L.P., Iowa City, for appellee.

Considered by McGIVERIN, C.J., and
HARRIS, LARSON, LAVORATO, and
TERNUS, JJ.

LARSON, Justice.

Aquadrill, Inc., an Iowa corporation, sued
Environmental Compliance Consulting Ser-
vices, Inc. (ECCS), an Oklahoma corporation

doing business in Iowa, and its two shareholders and officers. On the failure of the defendants to provide discovery information, the court entered a judgment by default against them as a sanction under Iowa Rule of Civil Procedure 134(b)(2)(C). One of the defendants, W. Thomas McKee, appealed on the grounds that the court (1) lacked personal jurisdiction over him, and (2) abused its discretion in ordering the default judgment as a sanction. We affirm.

In December 1993 Aquadrill filed a petition against ECCS asserting claims for breach of contract and conversion based on the failure of ECCS to pay for drilling services provided in Iowa by Aquadrill. In 1994 Aquadrill amended its petition to add defendants McKee and Claudia Wright, principals of ECCS, as individual defendants. The amended petition asserted claims based on breach of contract, negligent misrepresentation, and fraudulent misrepresentation.

McKee filed a motion to dismiss the petition, based on lack of personal jurisdiction over him. He asserted that he has never lived in Iowa, owns no real estate or personal property in Iowa, and that all of his visits to Iowa have been purely for business purposes, including some on behalf of ECCS. Aquadrill responded that McKee negligently and falsely represented that in the event ECCS did not pay its outstanding balance with Aquadrill McKee would personally pay it and that these contacts in Iowa were sufficient to vest an Iowa court with personal jurisdiction over McKee.

Aquadrill served requests for production of documents and interrogatories on ECCS, and by agreement of counsel, all previous discovery requests directed to ECCS would also be applicable to the additional parties, including McKee. On May 3, 1995, the district court ordered the defendants to answer certain interrogatories. The court entered a second order on May 19, 1995, ordering the defendants to produce certain documents by June 12, 1995.

The defendants failed to produce the documents, and Aquadrill filed a motion for sanctions on June 29, 1995. The court scheduled a hearing on the motion for August 4, 1995, and on that date, the defendants produced some of the documents to Aquadrill. In an order dated August 10, 1995, following a hearing on a motion for sanctions, the district court found that the defendants had willfully failed to comply with the discovery orders and entered a default judgment against them. McKee filed this appeal.

## I. *Personal Jurisdiction.*

There is no dispute that the corporate defendant, ECCS, was subject to the jurisdiction of the State of Iowa; it was actively engaged in environmental cleanups in Iowa. The issue is whether McKee, by virtue of his contacts with Iowa, can be made to defend an action here. *Meyers v. Kallestead,* 476 N.W.2d 65, 66 (Iowa 1991), stated the rules for review of a ruling on a motion to dismiss for lack of personal jurisdiction:

> [W]e accept as true the allegations of the petition and the contents of uncontroverted affidavits. The plaintiff has the burden to sustain the requisite jurisdiction, but when he [or she] establishes a prima facie case the defendant has the burden of producing evidence to rebut that showing. The trial court's findings of fact have the effect of a jury verdict and are subject to challenge only if not supported by substantial evidence in the record; we are not bound, however, by the trial court's application of legal principles or its conclusions of law.

(Quoting *Percival v. Bankers Trust Co.,* 450 N.W.2d 860, 861 (Iowa 1990)).

We apply a two-step analysis in determining whether the district court appropriately exercised personal jurisdiction: (1) whether a statute or rule authorizes the exercise of jurisdiction, and (2) whether the exercise of jurisdiction would offend the due process principles in the United States Constitution. *Larsen v. Scholl,* 296 N.W.2d 785, 787 (Iowa 1980).

A. *Authorization by statute or rule.* The first question is answered by Iowa Rule of Civil Procedure 56.2, which provides in part:

> Every corporation [or] individual ... that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such

... individual ... amenable to suit in Iowa in every case not contrary to the provisions of the Constitution of the United States. *See also* Iowa Code § 617.3 (1993) (long-arm statute authorizing service of process or original notice on nonresidents who contract with a resident of Iowa or commit a tort in Iowa ).

B. *The effect on due process.* In *Burger King Corp. v. Rudzewicz,* the United States Supreme Court stated:

> [T]he Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit[.]"

Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities[.] ... And with respect to interstate contractual obligations, we have emphasized that parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities.

We have noted several reasons why a forum legitimately may exercise personal jurisdiction over a nonresident who "purposefully directs" his activities toward forum residents. A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. Moreover, "where individuals purposely derive benefit" from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed. And because "modern transportation and communications have made it much less burdensome for a party sued to

defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.

471 U.S. 462, 472–74, 105 S.Ct. 2174, 2181–83, 85 L.Ed.2d 528, 540–41 (1985) (citations omitted) (footnotes omitted) (quoting *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154, 1161 (1950), and *McGee v. International Life Ins. Co.,* 355 U.S. 220, 222–23, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 225–26 (1957)).

▮ To determine whether the exercise of jurisdiction offends the due process principles of the constitution, we have applied a five-factor test:

(1) the quantity of the contacts,

(2) the nature and quality of the contacts,

(3) the source and connection of the cause of action with those contacts,

(4) the interest of the forum state, and

(5) convenience.

*Larsen,* 296 N.W.2d at 788; *accord Covia v. Robinson,* 507 N.W.2d 411, 415 (Iowa 1993). The first three factors are the most important. *Bankers Trust Co. v. Fidata Trust Co.,* 452 N.W.2d 411, 413 (Iowa 1990); *Larsen,* 296 N.W.2d at 788. " '[T]he critical analysis must be on the relationship among the defendant, the forum and the litigation.' " *Meyers,* 476 N.W.2d at 68 (quoting with approval, *West Am. Ins. Co. v. Westin, Inc.,* 337 N.W.2d 676, 678–79 (Minn.1983)).

In resolving jurisdictional questions regarding nonresidents, based on the five factors of *Larsen,* we take the allegations of the petition as true. *Meyers,* 476 N.W.2d at 66.

(1) *The quantity of contacts.* As for the quantity of contacts, the affidavit of Diane E. Joslyn, vice president of Aquadrill, states that she communicated with McKee in person, on the telephone, and by mail. According to Joslyn's affidavit, during the course of some of these communications McKee represented that, if defendant ECCS did not pay its debt to Aquadrill, McKee would pay it. All communications with McKee took place while Joslyn was in Johnson County, Iowa.

(2) *The nature and quality of the contacts.* According to the petition and affidavits, McKee attempted to persuade Aquadrill to forebear on collection efforts against ECCS. Aquadrill alleges that McKee had a personal financial interest in supplying this information to Aquadrill and that McKee was therefore acting as an individual in his own interest, not merely as an agent of the corporation.

(3) *The source and connection of the cause of action with those contacts.* Aquadrill alleges that the sources of the negligent and fraudulent contacts were McKee and Wright. According to the plaintiff's petition, these contacts have a close nexus with the causes of action of negligent misrepresentation, fraudulent misrepresentation, and breach of contract. As alleged, these communications were meant to deceive, with McKee reaping the benefits of the deception.

(4) *The interest of the forum state.* The State of Iowa has an interest in exercising jurisdiction over a party who negligently or fraudulently misrepresented that he would pay an Iowa corporation for work done in Iowa. *See Burger King,* 471 U.S. at 473–74, 105 S.Ct. at 2182, 85 L.Ed.2d at 541 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.").

(5) *Convenience.* Iowa is the situs of Aquadrill's work performed for ECCS, and it is the state of residence of the officers and employees of Aquadrill as well as other witnesses who would be expected to testify. It is therefore a convenient forum.

Under the five factors of *Larsen,* and taking as true the allegations of the affidavits and petition, we conclude that exercising jurisdiction over the defendant McKee does not offend due process.

## II. *The Fiduciary Shield Doctrine.*

McKee argues that the "fiduciary shield" doctrine exempts him from personal jurisdiction. In *Whalen v. Connelly,* 545 N.W.2d 284, 295 (Iowa 1996), we said:

We adopted the fiduciary-shield doctrine in *State ex rel. Miller v. Internal Energy Management Corp.,* 324 N.W.2d 707, 710–11 (Iowa 1982), as a due-process limitation on our exercise of jurisdiction. According to the doctrine a nonresident corporate agent is not individually subject to the forum state's in personam jurisdiction if that individual's only contact with the state is by virtue of his acts as a fiduciary of the corporation. *Id.* at 711–12.

*Accord State ex rel. Miller v. Baxter Chrysler Plymouth, Inc.,* 456 N.W.2d 371, 378 (Iowa 1990). We have noted, however, that defendants' "status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum state must be assessed individually." *Whalen,* 545 N.W.2d at 295; *see Internal Energy Management Corp.,* 324 N.W.2d at 712 (pointing out exception to doctrine when corporation is not a viable entity).

Aquadrill argues that the fiduciary shield doctrine should not protect McKee from jurisdiction on its claim that seeks to pierce the corporate veil. Aquadrill alleged that ECCS was undercapitalized, did not keep separate books, commingled corporate assets with those of its shareholders, officers, and directors, and was used to promote fraud. If proven, the allegations could result in a judgment disregarding the corporate entity and imposing personal liability. *See Internal Energy Management Corp.,* 324 N.W.2d at 712.

In *Internal Energy Management Corp.,* we adopted the following standard for application of the fiduciary shield doctrine in such cases:

In deciding whether the corporation is a real or a shell entity, the appropriate standard should not be the very stringent test, normally applied in other contexts, for piercing the corporate veil. That test requires a showing not only that the corporation is a shell, but that it was used to commit a fraud. When both of these showings are made the corporate entity is disregarded, and the individuals behind the corporate shell are held responsible for its liabilities. The fiduciary shield doctrine, however, is not concerned with liability. It is concerned with jurisdiction, and specifically with the fairness of asserting jurisdiction over a person who is acting solely in

the interests of another. In determining whether a corporation for which an owner-employee acts is really "another," it is sufficient to inquire whether the corporation is a real or shell entity. If the corporation is merely a shell, it is equitable, even if the shell may not have been used to perpetrate a fraud, to subject its owner personally to the court's jurisdiction to defend the acts he has done on behalf of his shell.

*Id.* at 714 (citation omitted) (quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 903 (2d Cir.1981)).

We conclude that the fiduciary shield doctrine should not deprive the Iowa court of personal jurisdiction over this defendant. The plaintiff could well prevail on its claim that ECCS was a shell corporation or insolvent, or both. In addition, McKee made it clear that his promise to pay was not solely on behalf of the corporation, which had apparently run out of credit with Aquadrill, but one in his own right. When the allegations of the petition and affidavits are taken as true, McKee did not act "only" for the benefit of the corporation, *see Whalen,* 545 N.W.2d at 295, but had mixed reasons, including the protection of his own financial investment in ECCS.

### III. *The Sanction Imposed.*

■ Iowa Rule of Civil Procedure 134(b)(2) provides:

If a party ... fails to obey an order to provide or permit discovery, ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

....

(C) An order ... rendering a judgment by default against the disobedient party....

In *Kendall/Hunt Publishing Co. v. Rowe,* 424 N.W.2d 235, 240 (Iowa 1988), we stated:

We do not reverse the district court's imposition of discovery sanctions unless there has been an abuse of discretion. *Sullivan v. Chicago & Northwestern Transp. Co.,* 326 N.W.2d 320, 324 (Iowa 1982). The range of that discretion nar-

rows when the drastic sanctions of dismissal or default are imposed pursuant to Iowa Rule of Civil Procedure 134(b)(2)(C). *Smiley v. Twin City Beef Co.,* 236 N.W.2d 356, 360 (Iowa 1975).

The district court found "that each defendant (ECCS, Ms. Wright, and Mr. McKee) has willfully failed to comply with the Court's previous discovery orders and that this disobedience was in bad faith." The court then determined that the sanction of judgment by default was appropriate.

As to McKee specifically, the court stated:

The individual defendant Mr. McKee, through counsel, produced certain documents at the August 4, 1995, hearing, but did not provide further answer in any respect to the interrogatories, contrary to the court's order. Mr. McKee, at a minimum could have provided what answers he could to the interrogatories, but he did not. Furthermore, the documents produced do not comply with the Court's prior order. Counsel for defendants concedes the existence of additional documents responsive to the request. Mr. McKee, as an officer, director, and shareholder of ECCS could have obtained documents from the corporation or shown what steps he took to try to obtain them. He did neither.

Further example of Mr. McKee's willful noncompliance with the Court's prior discovery order is the fact that he produced no state income tax returns and produced only federal returns for the years 1992 and 1993. The request concerned tax years predating ECCS's incorporation to the present.

McKee concedes that some form of sanction is appropriate, if we affirm the court's ruling on personal jurisdiction. Nevertheless, he argues that a default judgment is too harsh. Contrary to the district court's findings, McKee argues that his noncompliance was not willful. He notes that he did produce some documents on August 4, 1995 (the day of the hearing on the motion for sanctions). He argues that he handed over all of the documents possible, given his limited access to documents and the time given him.

Aquadrill responds that McKee had ample time to comply. It argues that he had eight months to comply with the order—from October 21, 1994, when the trial court allowed Aquadrill to amend its petition to include McKee, until June 12, 1995, the date by which the court ordered the discovery produced. McKee claims that his time was actually shorter because he was not formally involved until March 14 when his motion to dismiss for lack of jurisdiction was denied. The district court and Aquadrill point out that McKee still had ample time and access to comply with at least part of the order. Specifically, Aquadrill argues he could have supplied information more personal to him, such as the number of stock shares he owned and his own state income tax returns, but he failed to do so.

McKee claims a valid excuse for not supplying some of the information. He claims he thought Wright was defending the suit and that, because of McKee's minimal role in the corporation, he did not have immediate access to some of the corporate information. However, he could have provided some information by the June 12, 1995 deadline, or at least shown what steps he took to try to obtain some of this information.

The question is whether McKee's actions can be seen as willful. *Smiley,* 236 N.W.2d at 360 ("[T]he drastic action of dismissal and entry of default judgment should not be ordered in the absence of willfulness, bad faith or fault for refusal to comply with our rule 134."). The fact that he produced nothing before the June 12, 1995 deadline is evidence that McKee willfully refused to comply with the court's order.

Upon consideration of the arguments, we conclude that the court did not abuse its discretion in granting the default judgment as a sanction. We therefore affirm.

**AFFIRMED.**