# IN THE COURT OF APPEALS OF IOWA

No. 20-1399
Filed January 12, 2022

**IN THE MATTER OF THE ESTATE OF CLARENCE I. LAUBE, Deceased**

**IRVIN LAUBE and PHILIP LAUBE,**
    Appellees,

**vs.**

**SHERRY REINTS,**
    Appellant.

_____

Appeal from the Iowa District Court for Butler County, Christopher C. Foy,

Judge.

The decedent's widow appeals from the district court's order enforcing a

premarital agreement that prohibits the widow from taking the spousal election

against the decedent's will.  **AFFIRMED.**

Gary Papenheim of Papenheim Law Office, Parkersburg, for appellant.

John J. Wood, Nathan D. Miller, and Jordan M. Talsma of Beecher, Field,

Walker, Morris, Hoffman & Johnson, P.C., Waterloo, for appellees.

Heard by Mullins, P.J., and Schumacher and Ahlers, JJ.

**PER CURIAM.**

Clarence Laube and Sherry Reints signed a premarital agreement before their 2011 marriage. The marriage was a second for each, as they were both widowed. When they married, Clarence was in his late seventies and Sherry was in her mid-sixties, and each party had children from the party's first marriage. Their premarital agreement prohibited each party from taking an elective share against the estate of the other party upon the other party's death.

Clarence died in 2019, and Sherry claimed an elective share against his estate. The estate resisted based on the terms of the premarital agreement. Sherry countered by arguing the agreement is unenforceable. Following a hearing, the district court found the agreement enforceable and refused to give effect to Sherry's election. Sherry appeals.

## I.     Standard of Review

We review de novo issues of a spouse's election to take against a will and the effect of a premarital agreement on that election. *In re Est. of Weber*, No. 14-1341, 2015 WL 4935693, at *1 (Iowa Ct. App. Aug. 19, 2015) (citing *In re Est. of Spurgeon*, 572 N.W.2d 595, 597 (Iowa 1998)).

## II.    Analysis of the Issues

Sherry raises several issues. We address them separately.

### A.     Statute-Based Challenges

Statute-based challenges to enforcement of premarital agreements are governed by Iowa Code section 596.8(1) (2019), which reads:

> A premarital agreement is not enforceable if the person against whom enforcement is sought proves any of the following:
> a.  The person did not execute the agreement voluntarily.

> b. The agreement was unconscionable when it was executed.
>
> c. Before the execution of the agreement the person was not provided a fair and reasonable disclosure of the property or financial obligations of the other spouse; and the person did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other spouse.

Sherry, as the person against whom enforcement of the agreement is sought, bears the burden to prove unenforceability by establishing at least one of the statutory grounds listed. *See* Iowa Code § 596.8(1) (placing the burden on "the person against whom enforcement is sought" to prove grounds); *see also In re Est. of Kloster*, No. 20-1245, 2021 WL 3076546, at *2 (Iowa Ct. App. July 21, 2021). Sherry does not claim she did not execute the agreement voluntarily, but she does assert the other two grounds for invalidating the agreement.

### 1. Unconscionability

Sherry asserts the agreement is unenforceable because it was unconscionable when it was executed. *See* Iowa Code § 596.8(1)(b). Although our courts have not given "unconscionability" a precise definition, it is not a concept that allows a party to avoid the party's obligations under "an unfavorable contract after experiencing buyer's remorse." *In re Marriage of Shanks*, 758 N.W.2d 506, 515–16 (Iowa 2008). "The concept of unconscionability includes both procedural and substantive elements." *Id.* at 515. Sherry claims both procedural and substantive unconscionability.

### a. Procedural Unconscionability

Determining whether execution of a premarital agreement is procedurally unconscionable involves looking at the process by which the agreement was entered. *Id.* at 517. It involves considering such factors as lack of understanding

of one of the parties; inequality of bargaining power; opportunity to seek independent counsel; relative sophistication of the parties in legal and financial matters; the temporal proximity between the introduction of the premarital agreement and the wedding date; use of highly technical or confusing language or fine print; and the use of fraudulent or deceptive practices to procure a party's assent to the agreement. *Id.*

After considering these factors in our de novo review, we conclude there was no procedural unconscionability in the execution of the agreement. While the evidence established Sherry was not sophisticated in legal and financial matters, the evidence did not establish Clarence was either. The evidence also showed that the topic of a premarital agreement and premarital planning was a topic of discussion for several months before execution of the agreement. Sherry enlisted the help of her long-time attorney in the process. His billing records show he consulted with Sherry on premarital issues starting nearly five months before the wedding. Those records also show he reviewed the premarital agreement fifteen days before it was signed, and the evidence established the signing took place nearly one full month before the wedding.[1] The agreement itself contains no fine

---

[1] The evidence of the exact process leading up to and including the signing of the agreement is somewhat cloudy because of Sherry's inconsistent memory. A review of her testimony shows a noticeable pattern of remembering details that tended to advance her claim while inexplicably being unable to recall details about the same events that tended to detract from it. For example, she claimed to have little to no recollection of meeting with her attorney about premarital issues or the premarital agreement, but, as noted, her attorney's billing records show work performed addressing premarital issues months before the agreement was signed, review of the premarital agreement fifteen days before Sherry was asked to sign it, and work related to the agreement on the day it was signed. Sherry's spotty memory causes us to question some of her testimony.

print or other deceptive formatting, and, while it necessarily contains some legal terminology, it contains no highly technical or confusing language. While Sherry claims to have been rushed into signing it without getting a chance to read it, her testimony was inconsistent. For example, at one point, she testified she did not read the agreement; but that testimony conflicted with other parts of her testimony in which she admitted reading parts of it, including the schedules attached to it. Having considered all evidence presented, we find no procedural unconscionability.

### b. Substantive Unconscionability

In assessing a claim of substantive unconscionability, it is essentially a given that a premarital agreement will be "financially one-sided in order to protect the assets of one prospective spouse." *Id*. at 516. As a result, "[c]ourts must resist the temptation to view disparity between the parties' financial circumstances as requiring a finding of substantive unconscionability." *Id*. Instead, courts should focus on whether "the provisions of the contract are mutual or the division of property is consistent with the financial conditions of the parties at the time of execution." *Id*. (quoting *In re Marriage of Spiegel*, 553 N.W.2d 309, 316 (Iowa 1996)).

As is to be expected, this case involves disparity between the financial conditions of the two parties. However, the agreement contains no disparity in obligations. The agreement includes provisions that are mutual and consistent with the financial conditions of the parties when the agreement was signed. The only provision of the agreement that is not mutual is a paragraph stating that Clarence will provide long-term care insurance for Sherry so long as they are

married to each other. This provision benefits Sherry, so it cannot be used as a basis for Sherry to claim substantive unconscionability.

After our de novo review, we find no substantive unconscionability.

## 2. Sufficiency of Disclosure

Sherry also asserts her agreement with Clarence is unenforceable under section 596.8(1)(c). The agreement includes two exhibits each signed by both parties. One exhibit discloses Clarence's assets, debts, and income; the other exhibit discloses Sherry's assets, debts, and income. Sherry claims Clarence's exhibit failed to disclose a 70.5-acre farm he owned, which is known as "the Fick Farm." The Fick Farm was valued in Clarence's estate at $615,000. Sherry claims Clarence's failure to disclose the Fick Farm on the exhibit attached to the agreement was a failure to provide the "fair and reasonable disclosure" of Clarence's property required by section 596.8(1)(c).

We reject Sherry's claim for two reasons. First, like the district court, we are not convinced Sherry proved the Fick Farm was not disclosed on the agreement's exhibit disclosing Clarence's property and income. Section 596.8(1)(c) requires "fair and reasonable" disclosure; it does not impose an "exacting standard" or require "precise valuations." *Shanks*, 758 N.W.2d at 519. Of the assets disclosed on the exhibit, $1,500,000 was attributed to farm assets in the form of shares of a farm limited liability company (LLC) Clarence owned.[2] Clarence's son testified that in 2011, when the agreement and its exhibits were

---

[2] The $1,500,000 of property was listed as "[s]hares of C & B Laube Farms, LLC." The exhibit did not itemize the assets included in the $1,500,000 value of the shares of the LLC.

signed, the farm economy was just coming out of a recession, so land values would have been lower than they were when Clarence died in 2019. He also testified that Clarence was no longer farming in 2011, so nearly all of the farm assets owned by the LLC listed on the exhibit would have been land. The evidence establishes that all land owned by Clarence and the LLC at the time of Clarence's death was worth $1,880,000.[3] The son further testified that the increase in value of the farm assets from the $1,500,000 disclosed on the agreement's exhibit to the $1,880,000 value at the time of Clarence's death about eight years later was consistent with a reasonable appreciation in value of the land over that period with the Fick Farm included in both calculations.

In contrast, even though she presented no persuasive evidence of the Fick Farm's value in 2011, Sherry claims that the $1,500,000 of farm assets listed on the agreement's exhibit did not include the Fick Farm. By this reasoning, the value of the Fick Farm would need to be added to the $1,500,000 disclosed on the agreement's exhibit to give an accurate statement of Clarence's net worth in 2011. This means that, even if we assume no growth in value of the Fick Farm by using the date-of-death appraised value of $615,000, Clarence's farm assets were really worth $2,115,000 in 2011, but dropped to a value of $1,880,000 when Clarence died in 2019. Sherry presented no persuasive evidence that would explain this drop in value over an eight-year period. Absent some persuasive evidence from Sherry that the value of Clarence's assets would have decreased over eight years rather than gradually increasing, we find Sherry's claim unpersuasive in

---

[3] Unchallenged evidence established that the Fick Farm was titled in Clarence's name and was never owned by the LLC.

comparison to the son's explanation. The son's explanation that the value of the Fick Farm must have been included in the disclosed values on the agreement's exhibit makes sense, as the growth in value of the farm assets from $1,500,000 to $1,880,000 over an eight-year period is more reasonable than the inexplicable decline in value that must be found to accept Sherry's explanation. *See* Iowa State Bar Ass'n, Iowa Civil Jury Instruction 100.9 (June 2020) (directing that conflicts in the evidence should be resolved by accepting the evidence found more believable); *Burger v. Omaha & C.B. St. Ry. Co.*, 117 N.W. 35, 38–39 (Iowa 1908) (same). Given the son's more persuasive explanation, we conclude the Fick Farm, although incorrectly included as part of the LLC, was most likely included in the valuation included on the agreement's exhibits. Therefore, Sherry failed to meet her burden to prove that Clarence failed to make a fair and reasonable disclosure of his property when the agreement was executed.

Second, section 596.8(1)(c)'s use of "and" between the obligation to prove failure to make fair and reasonable disclosure and the obligation to prove the challenging party "did not have, or reasonably could not have had, an adequate knowledge of the property" of the other party means Sherry had the obligation to prove both conditions. *See Casteel v. Iowa Dep't of Transp.*, 395 N.W.2d 896, 898 (Iowa 1986) ("Ordinarily, the word 'and' is used as a conjunctive, requiring satisfaction of both listed conditions."). We have already explained that Sherry did not prove the first condition, which ends the inquiry. Nevertheless, in the interest of thoroughness, we also note she did not prove the second. The second condition of section 596.8(1)(c) is that the challenging party "did not have, or reasonably could not have had, an adequate knowledge of the property" of the other party.

The inclusion of "reasonably could not have had" incorporates the concept of inquiry notice:

> "Inquiry notice" is that notice that a plaintiff would have possessed after due investigation. "Inquiry notice," which is recognized as a form of actual notice, is knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to ultimate facts. Under the doctrine of inquiry notice, a good-faith failure to seek out the ultimate facts constitutes no defense, and a party asserting this argument is still chargeable with the undiscovered facts as long as a reasonably diligent inquiry would have uncovered them.

58 Am. Jur. 2d *Notice* § 4 (Nov. 2021 update) (footnotes omitted); *see also Buechel v. Five Star Quality Care, Inc.*, 745 N.W.2d 732, 736 (Iowa 2008) (discussing "the concept of inquiry notice" and its relation to "should have discovered" in the context of the statute of limitations). On cross-examination, Sherry made these admissions:

> Q. And isn't it true that you were aware that part of Clarence's farm consisted of the Fick Century farm? A. No.
> Q. You knew that there was farm ground that had been in that family for over a hundred years, didn't you? A. Yes. But I had no idea how much or where.
> Q. Okay. But you knew about it, is the point. A. Well, he said he had some woods and some land over there is all he said.
> Q. Right. A. But—
> Q. So the point of it, you were aware that as part of the farm that Clarence had, there was a century farm that had been in the family for a long, long time? A. If that's what you call it. I didn't know how long he had it.

This exchange shows Sherry knew about the farm ground that was known as the Fick Farm and that it had been in Clarence's family for a considerable time, even though she did not know exactly where it was, the number of acres, or how long it had been in the family. At the very least, this exchange shows Sherry was on inquiry notice and should have sought more details if it interested her. The fact

she did not do so prevents her from meeting the second condition of section 596.8(1)(c).

For these reasons, we conclude Sherry has failed to meet her burden of establishing grounds for invalidating the enforceability of the agreement under section 596.8(1)(c).

## B.    Other Challenges

Sherry raises two other issues.  First, she claims the estate cannot enforce the agreement because Clarence or his estate breached the agreement.  She points to terms of the agreement that required Clarence to provide a long-term-care insurance policy for Sherry and guarantee the policy remained in force if he died before Sherry.  She claims neither Clarence nor his estate have provided the guarantee.  Second, she claims the estate's action in sending her notice of the deadline for filing an election to take against the will, *see* Iowa Code section 633.237, waived the estate's right to challenge the election.  The estate concedes Sherry preserved error on these two issues.  We agree with the special occurrence that "though no challenge is raised, we have the authority to raise the issue on our own motion.  *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("[T]his court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal.").  Because the special concurrence challenges error preservation, we will address the issue.

At the close of the evidentiary hearing in this case, the court did not invite oral closing arguments but offered counsel an opportunity to submit written briefs and set briefing deadlines.  Sherry submitted a written final argument, after which

the estate filed a responsive written argument. Sherry's written argument identified by specific headings five different issues: (1) "failure to disclose [] assets," (2) "the decedent and his estate have not complied with the terms of the premarital agreement," (3) "the premarital agreement was unconscionable when it was signed," (4) "the premarital agreement was not voluntary," and (5) "the estate waived its right to assert the premarital prohibition against taking the elective share." The estate's written argument identified and responded under headings separately addressing each of those five issues raised and argued by Sherry in her brief. The estate challenged each issue on the merits but did not challenge Sherry's right to argue those issues.

The district court's ruling summarized the issues by stating that "Sherry argues that the premarital agreement is not enforceable, so the executors must honor her election to take against the Will." The court's analysis was set out under one singular heading: "Enforceability of Premarital Agreement." After it addressed substantive and procedural unconscionability and failure to disclose assets, it stated, "The Court has considered the other arguments made by Sherry in support of her challenge to the enforceability of the premarital agreement and finds them to be without merit." The estate's brief on appeal clearly recognizes the district court's ruling as denying the two remaining issues.

Error preservation generally involves two steps: (1) properly raising the issue before the district court and (2) obtaining a ruling. *See Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002).[4]

---

[4] The rationale for our error-preservation rules has been stated as follows:

Error preservation is based on principles of fairness:

> [I]t is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. Furthermore, it is unfair to allow a party to choose to remain silent in the trial court in the face of error, taking a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable.

*DeVoss v. State*, 648 N.W.2d 56, 60 (Iowa 2002) (alteration in original) (quoting 5 Am. Jur. 2d *Appellate Review* § 690, at 360–61 (1995)).  In the present case, there is no question the issues were raised and argued by Sherry in her written final arguments and were challenged by the estate in its responsive arguments.  The issues were squarely before the court.  The only question is whether "a ruling was obtained" by the one sentence of the district court finding the "the other arguments" to be "without merit."

The fact the district court used the word "arguments" instead of the word "issues" is of no consequence.  The court did not use the word "issue" any place in its ruling, yet there is no doubt it addressed the other three issues we have

---

Important policies underlie error preservation rules.  These policies are all grounded in the "societal belief in the efficacy of the adversary system."  First, the adverse party should not be surprised by new arguments or issues on appeal.  Second, it is unfair to reverse a trial court based on arguments not before it.  Third, raising issues for the first time on appeal is not a prudent use of scarce judicial resources.  If a potential error were called to the trial court's attention, the trial court, theoretically, would correct the error and eliminate the need for appellate review.  Fourth, the error preservation rules serve to deter counsel from strategically declining to raise objections at trial.  Finally, "[a]llowing new issues on appeal also may diminish the need to be fully prepared for the trial itself, a result contrary to the current concern with the competency of trial attorneys."

Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 42–43 (2006) (footnotes omitted).

resolved above. Also, the district court's ruling addressed the essence of all Sherry's arguments relating to the other three issues, so there is no confusion among the parties that when the district court references "other arguments," it is referencing the arguments relating to the issues it had not analyzed in some detail in its ruling, that the estate breached the premarital agreement and the estate waived its right to enforce the agreement. It would have been better practice for Sherry to have moved the district court for a more specific ruling as to the last two issues. But, we have no doubt the district court's terse, one-sentence ruling was dispositive of those two issues. Furthermore, we do not believe this is a case in which the district court will read this opinion and be at all surprised by the five issues raised and decided on appeal. Error-preservation rules, though important, are, like most rules, intended as shields not swords. Here, no imposition of a shield is necessary, as no one will be surprised or disadvantaged by an appellate decision on the two remaining issues. Although a more thoroughly reasoned analysis of those last two issues might have been helpful to us, the district court's conclusion they were without merit is adequate for us to address the issues. At the end of the day, as noted, error-preservation rules are based on fairness and are designed to protect the district court and opposing party from being ambushed by the submission of issues on appeal that were not raised in the district court. *See id.* at 63. Here, the issues were raised and responded to in the district court and, although terse, the district court rejected the issues on the merits. No improper ambush is present here. Thus, we find the issues preserved.

### 1.     Breach of Contract

Paragraph ten of the premarital agreement states:

> 10.  DISABILITY.  Upon the partial or total disability of either party, the other party shall assume complete responsibility for the necessary care of the disabled party, to the full extent of all the earnings and assets of the caring party.  Clarence Laube has purchased a long term care policy with [an insurance company], policy number [stated], to provide long term care benefits for Sherry Lee Reints as long as they are married to each other.  Should he die first, he has made arrangements for C & B Laube Farms, LLC, of which he presently owns 96% and is its Manger, to guarantee to keep this policy in force.  Clarence does not have long-term care insurance on himself because of his age the cost is not economical.  However, he has sufficient assets to cover his foreseeable long term care needs and will indemnify and hold harmless Sherry from any liability related to his medical, or long term care expenses.

Sherry asserts that Clarence or his estate breached paragraph ten because the long-term-care policy is not sufficiently guaranteed to continue into the future. However, Sherry acknowledges Clarence secured the required policy during his lifetime and his estate currently owns the policy.  The policy remains in effect, and Sherry's belief that the estate may try to revoke it in the future does not present a current breach of the premarital agreement.  Furthermore, even if Clarence or his estate breached paragraph ten by failing to adequately guarantee the long-term-care policy, such a breach on a single item would not be a material breach that would render the entire premarital agreement unenforceable.  *See Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 691–93 (Iowa 1999) (distinguishing between a "material" and "partial" breach).  Therefore, we reject Sherry's breach-of-contract claim.

**2. Notice**

Sherry acknowledges section 633.237(1) required the estate to send her notice of her statutory right to file an election to take against Clarence's will. Nevertheless, Sherry asserts the estate could have sought permission from the court to skip the section 633.237 notice based on its position that the premarital agreement precluded her from electing against the will. By sending her the section 633.237 notice even when the estate believed she could not claim an elective share, Sherry argues the estate waived its right to rely on the premarital agreement to defeat her claim. We disagree for two reasons.

First, waiver is "the voluntary or intentional relinquishment of a known right." *Scheetz v. IMT Ins. Co.*, 324 N.W.2d 302, 304 (Iowa 1982) (quoting *Travelers Indem. Co. v. Fields*, 317 N.W.2d 176, 186 (Iowa 1982)). "Waiver can be shown by the affirmative acts of a party, or can be inferred from conduct that supports the conclusion waiver was intended." *Id.* As the party asserting waiver, Sherry bears the burden to prove the estate relinquished its right to assert the premarital agreement as a bar to her taking against the will. *See In re Est. of Warrington*, 686 N.W.2d 198, 202 (Iowa 2004) ("The party asserting waiver . . . bears the burden of proof."). Sherry presented no evidence that, at the time the estate sent the section 633.237 notice, the estate was aware that the premarital agreement precluded Sherry from claiming an elective share or the court could relieve the estate of the obligation to send the section 633.237 notice. Even assuming the court could have and would have relieved the estate from the obligation to send the section 633.237 notice due to futility, the estate's conduct of sending the

required notice does not establish the estate relinquished its right to rely on the premarital agreement to defeat Sherry's efforts to take against the will.

Second, the statute requires notice to be given to the surviving spouse. *See* Iowa Code § 633.237(1) ("[T]he personal representative shall cause to be served a written notice upon the surviving spouse . . . notifying the surviving spouse" of the spouse's right to seek an elective share.). There is nothing in the statute that suggests that the estate representatives' opinions about whether Sherry had waived her right to seek an elective share by signing the premarital agreement negate their obligation to notify Sherry of her right to make a claim for the elective share. *See Commerce Bank v. McGowen*, 956 N.W.2d 128, 133 (Iowa 2021) ("If the 'text of a statute is plain and its meaning clear, we will not search for a meaning beyond the express terms of the statute or resort to rules of construction.'" (quoting *In re Est. of Voss*, 553 N.W.2d 878, 880 (Iowa 1996))). To adopt Sherry's position would result in unilateral decision-making by the estate's representatives that would defeat the purpose of the notice provisions of section 633.237(1). If the estate representatives had no obligation to notify Sherry of her right to seek an elective share after the representatives decided Sherry had waived her right to seek an elective share by signing the premarital agreement, how else would Sherry know that she had the right to challenge the representatives' decision or the time requirements for doing so? Notifying Sherry of her right to seek an elective share and her deadline for doing so is how the issue is brought to a head. The estate gave notice. Sherry filed her election. The estate resisted. This sequence of events allowed both parties to assert their conflicting positions and brought the issue to the district court's attention for resolution. As a result, the purpose of

section 633.237(1)'s notice requirements was fulfilled. Allowing the estate representatives to dispense with the notice requirement just because they did not think Sherry had the right to seek an elective share would short circuit the process. We find no support in the statute for this unilateral decision-making process, and Sherry cites no persuasive authority in support of it.

For both these reasons, we reject Sherry's waiver argument.

## III. Conclusion

Sherry failed to meet her burden to establish unenforceability of her premarital agreement based on unconscionability or inadequate disclosure. She also failed to prove a material breach of the agreement by Clarence or his estate that would relieve her of her obligation to perform her obligation to not take against Clarence's will. Finally, the estate did not waive its ability to contest Sherry's efforts to take against Clarence's will by sending her notice of her right to make such a claim. As a result, we affirm.

**AFFIRMED.**

All judges concur, except Ahlers, J., who concurs specially.

**AHLERS, Judge** (concurring specially).

I agree with the per curiam opinion that finds Sherry failed to meet her burden to establish unenforceability of her premarital agreement based on unconscionability or inadequate disclosure. I also agree with the per curiam opinion's outcome on the merits of the other two issues if error had been preserved on those issues. I write separately to express my disagreement with the decision to reach the merits of the other two issues—specifically Sherry's claims that (1) Clarence or his estate breached the agreement, and (2) the estate's action in sending her notice of the deadline for filing an election to take against the will pursuant to section 633.237(1) waived the estate's right to challenge the election. I disagree with the decision to reach the merits of these claims because Sherry did not preserve error on them.

I acknowledge that the estate does not challenge error preservation on these issues. But even though no challenge is raised, we have the authority to raise the issue on our own motion. *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("[T]his court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal."). I believe we should exercise that authority here and reject Sherry's claim that she preserved error.

Sherry contends she preserved error by "raising the issue in her written final argument." I agree that Sherry raised the issues. But raising the issues is not enough. To preserve error, a party must both raise the issue and secure a ruling on it. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("When a district court fails to rule on an issue properly raised by a party, the party who raised the issue

must file a motion requesting a ruling in order to preserve error for appeal."). Even though Sherry raised these two issues in her post-trial filings, the district court did not rule on either of them, and Sherry took no action to request a ruling after the district court failed to do so.

Sherry's claim that she preserved error relies on one sentence. After analyzing the fair-disclosure and unconscionability issues in detail, the district court stated, "The Court has considered the other arguments made by Sherry in support of her challenge to the enforceability of the premarital agreement and finds them to be without merit." Sherry admits that this isolated sentence in the court's ruling is the only thing supporting her claim that she preserved error. I don't believe it does.

First, the sentence references "arguments" and not "issues." To me, this suggests the district court was referring to other possible arguments on the issues the court addressed, not other issues it did not.

Second, and more importantly, I find this catchall sentence insufficient to constitute a ruling on the two claims at issue to preserve error on them. It is true that our error preservation rules are "not concerned with the substance, logic, or detail in the district court's decision." *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012). For that reason, "[i]f the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." *Id.* However, even if the court identifies an issue in its ruling, if the court does not rule on the issue, the issue is not preserved for appeal absent the filing of a motion seeking a ruling. *See Addison Ins. Co. v. Knight, Hoppe, Kurnik & Knight, L.L.C.*, 734 N.W.2d 473,

479 (Iowa 2007). Here, nothing in the court's ruling suggests the court was aware of these two issues, let alone considered them. The ruling never mentions and makes no findings about either issue. In fact, the ruling does not even mention the long-term care policy or the notice of elective share sent to Sherry.

As the district court did not mention either of these issues or make any factual or legal findings to resolve them, I cannot conclude the court considered the issues. As a result, failure to call the district court's attention to its lack of ruling on the issues results in waiver of the issues due to lack of error preservation. *Meier*, 641 N.W.2d at 541. To rule otherwise would defeat the dual purposes of our error preservation rules: (1) to afford the district court the opportunity to avoid or correct errors; and (2) to provide our appellate courts with an adequate record to review claimed errors. *See State v. Ambrose*, 861 N.W.2d 550, 555 (Iowa 2015).

To me, this case epitomizes the problem of trying to decide issues on appeal when error has not been preserved. Because the district court made no mention of these issues and stated no factual findings or legal conclusions about them, what are we reviewing? It seems to me that asking us to reach the merits of these issues asks us to serve as trial judges rather than appellate judges. Serving as trial judges making original factual findings is not our role. *See UE Local 893/IUP v. State*, 928 N.W.2d 51, 60 (Iowa 2019) (noting an appellate court is "a court of review, not of first view" (quoting *Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 413 (Iowa 2017))). Even under a de novo review standard such as this, our task is still to review. It is not to make original factual findings as if this appeal is a new trial on the transcript. Here, the district court's failure to

address these issues coupled with Sherry's failure to call the oversight to the court's attention means there is nothing for us to review.  I respectfully suggest we should decline to address these two issues because error was not preserved.